# In re Alonzo BRIONES, Respondent

File A75 907 909 - Dallas

*Decided November 29, 2007*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Section 212(a)(9)(C)(i)(I) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(9)(C)(i)(I) (2000), covers recidivist immigration violators, so to be inadmissible under that section, an alien must depart the United States after accruing an aggregate period of "unlawful presence" of more than 1 year and thereafter reenter, or attempt to reenter, the United States without being admitted.

(2) Adjustment of status under section 245(i) of the Act, 8 U.S.C. § 1255(i) (2000), is not available to an alien who is inadmissible under section 212(a)(9)(C)(i)(I) of the Act.

FOR RESPONDENT: J. Joseph Reina, Esquire, Dallas, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY: Ronald Lapid, Appellate Counsel; Paul B. Hunker III, Chief Counsel

BEFORE: Board Panel: FILPPU, COLE, and PAULEY, Board Members.

PAULEY, Board Member:

The respondent appeals from an Immigration Judge's March 31, 2005, decision pretermitting his application for adjustment of status under section 245(i) of the Immigration and Nationality Act, 8 U.S.C. § 1255(i) (2000).[1] The Department of Homeland Security ("DHS") opposes the appeal. The appeal will be dismissed.

---

[1] The Immigration Judge's original oral decision contains transcription errors that he corrected, both by handwritten interlineation and by issuance of the March 31, 2005, written decision from which the present appeal was taken. We conclude, and the parties do not argue otherwise, that the Immigration Judge's decision, as corrected, provides a meaningful basis for appellate review.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico who entered the United States without inspection in 1992.  In March 1993, the respondent's father, who was then a lawful permanent resident of the United States, filed a Petition for Alien Relative (Form I-130) on the respondent's behalf, seeking to classify him as a family-sponsored immigrant in the second-preference category, i.e., as the unmarried son of a lawful permanent resident.  *See* section 203(a)(2) of the Act, 8 U.S.C. § 1153(a)(2) (1988).  The former Immigration and Naturalization Service ("INS") approved the petition in January 1994, but no visa number was then available to the respondent because his preference category was oversubscribed.[2]  Nonetheless, the respondent remained in the United States without permission until December 1998, when he departed to Mexico.

On March 3, 1999, the respondent's father became a naturalized citizen of the United States.  As a result, the respondent's approved second-preference visa petition was automatically converted to an approved first-preference petition.  8 C.F.R. § 204.2(i)(3) (1999).  On March 18, 1999, the respondent reentered the United States without being admitted or paroled by an immigration officer, and he has remained in the United States ever since.  In July 1999, the respondent filed an Application to Register Permanent Residence or Adjust Status (Form I-485) with the DHS pursuant to section 245(i) of the Act on the basis of his approved visa petition.

In 2004, the DHS denied the respondent's adjustment of status application and initiated the present removal proceedings, in which the respondent is charged with inadmissibility as an alien who reentered the United States without admission after having previously been unlawfully present in the United States for an aggregate period of more than 1 year.  *See* section 212(a)(9)(C)(i)(I) of the Act, 8 U.S.C. § 1182(a)(9)(C)(i)(I) (2000).  The respondent denied the charge but also sought to renew his application for adjustment of status, arguing that inadmissibility under section 212(a)(9)(C)(i)(I) of the Act was no impediment to section 245(i) adjustment, which is available by its terms to aliens who are present in the United States after having entered without inspection.  The Immigration Judge pretermitted the application, however, concluding that the respondent's inadmissibility under section 212(a)(9)(C)(i)(I) of

---

[2] On March 1, 2003, the functions of the former INS were transferred to the DHS pursuant to Title IV of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2177.  To avoid confusion, the former INS shall be referred to in this order as the DHS unless context dictates otherwise.

the Act rendered him ineligible for adjustment of status.[3] The respondent appealed, and at our request the parties have filed supplemental briefs and appeared for oral argument.

## II.  ISSUE

The principal issue on appeal is whether adjustment of status under section 245(i) of the Act is available to an alien who is inadmissible to the United States under section 212(a)(9)(C)(i)(I) of the Act.

## III.  ANALYSIS

### A.  Inadmissibility Under Section 212(a)(9)(C)(i)(I) of the Act

The Immigration Judge determined that the respondent is inadmissible to the United States under section 212(a)(9)(C)(i)(I) of the Act.  In 2004, when the DHS initiated these proceedings, the statute provided as follows, in pertinent part:

§ 1182.  Inadmissible aliens
(a)  Classes of aliens ineligible for visas or admission
    Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:
    . . . .
    (9)  Aliens previously removed
        . . . .
        (C)  Aliens unlawfully present after previous immigration violations
            (i)  In general
                Any alien who—
                    (I)  has been unlawfully present in the United States for an aggregate period of more than 1 year, or
                    (II)  has been ordered removed under section 1225(b)(1) of this

---

[3]  At the time of the Immigration Judge's decision in March 2005, visa numbers were available to first-preference family-sponsored immigrants from Mexico whose visa petitions had been filed before October 22, 1994.  *See* Bureau of Consular Affairs, U.S. Dep't of State, Visa Bulletin, Vol. VIII, No. 79 (Mar. 2005), *available at* http://travel.state.gov/visa/frvi/bulletin/bulletin_2111.html.  Because the respondent had a current priority date when he submitted his adjustment application to the Immigration Judge, he is not rendered ineligible for such relief by virtue of the subsequent retrogression of his priority date, although final approval of the application would have to be held in abeyance. *See* United States Citizenship and Immigration Services Operations Instructions 245.4(a)(6); *cf. also Matter of Ho*, 15 I&N Dec. 692, 693-94 (BIA 1976).

> title, section 1229a of this title, or any other provision of law, and who enters or attempts to reenter the United States without being admitted is inadmissible.
>
>  (ii) Exception
>
> Clause (i) shall not apply to an alien seeking admission more than 10 years after the date of the alien's last departure from the United States if, prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory, the Attorney General has consented to the alien's reapplying for admission.

Section 212(a)(9)(C) was enacted pursuant to section 301(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-577 (effective Apr. 1, 1997) ("IIRIRA").    The purpose of the statute was to single out recidivist immigration violators and make it more difficult for them to be admitted to the United States after having departed. *See generally Matter of Rodarte*, 23 I&N Dec. 905, 909 (BIA 2006); *Matter of Torres-Garcia*, 23 I&N Dec. 866, 868 (BIA 2006).

It is undisputed that the respondent was unlawfully present in the United States for more than 1 year between April 1, 1997, the date when section 212(a)(9)(C) of the Act went into effect, and December 1998 when he returned to Mexico.[4]  It is also undisputed that he reentered the United States in March 1999 without being inspected, admitted, or paroled.  Because the respondent entered the United States without admission or parole after a prior period of unlawful presence in this country of more than 1 year, he is inadmissible pursuant to the plain language of section 212(a)(9)(C)(i)(I).  Furthermore, he cannot presently be granted permission to reapply for admission under section 212(a)(9)(C)(ii), either prospectively or retroactively, because his last departure from the United States occurred less than 10 years

---

[4] The respondent's presence during this period was unlawful within the meaning of section 212(a)(9)(C) despite his status as a "grandfathered alien," i.e., as the beneficiary of a visa petition that was filed before April 30, 2001. *See* 8 C.F.R. § 1245.10(m) (2007) ("If the alien is not in a period of stay authorized by the Attorney General, the fact that he or she is a grandfathered alien does not prevent the alien from accruing unlawful presence under section 212(a)(9)(B) and (C) of the Act."); *see also* Adjustment of Status to That of Person Admitted for Permanent Residence; Temporary Removal of Certain Restrictions of Eligibility, 66 Fed. Reg. 16,383, 16,386 (Mar. 26, 2001), 2001 WL 284947 ("The mere filing of a visa petition . . . that has the effect of grandfathering the alien has no effect on an alien's unlawful presence in the United States . . . .").

ago. *Matter of Torres-Garcia*, *supra*, at 873-76.[5] Having established that the respondent is inadmissible and removable as charged, we now turn to the question whether he is eligible for adjustment of status under section 245(i) of the Act despite his inadmissibility.

## B.  Section 245(i) Adjustment

### 1.  Background and Text of Section 245(i)

Congress has generally limited the availability of adjustment of status to aliens who have been "inspected and admitted or paroled into the United States."  Section 245(a) of the Act.  The purpose of this "inspection and admission" requirement is to discourage intending immigrants from moving to the United States before becoming fully eligible for permanent residence and to encourage them to follow the orderly consular process for the issuance of immigrant visas.  By the early 1990s, however, Congress had determined that the inspection and admission requirement had become an undesirable impediment to the acquisition of permanent resident status by many close relatives of the more than 2.5 million aliens whose immigration status had been "legalized" pursuant to section 201(a) of the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, 3394 (codified at section 245A of the Act, 8 U.S.C. § 1225a).  Because of the inspection and admission requirement, many close family members of these legalized aliens were obliged to leave the United States so that they could apply for an immigrant visa at a consulate or embassy abroad, placing a significant administrative burden on the resources of the State Department and exposing the aliens themselves to considerable personal expense.  *See* Adjustment of Status to That of Person Admitted for Permanent Residence; Temporary Removal of Certain Restrictions of Eligibility, 59 Fed. Reg. 51,091, 51,092 (Oct. 7, 1994), 1994 WL 543334.

---

[5]  During the pendency of this appeal, Congress transferred authority to adjudicate waiver applications under section 212(a)(9)(C)(ii) of the Act from the Attorney General to the Secretary of Homeland Security.  *See* Violence Against Women and Department of Justice Reauthorization Act–Technical Corrections, Pub. L. No. 109-271, § 6(b),120 Stat. 750, 762 (2006).  Consequently, even if the respondent's last departure from the United States had occurred more than 10 years ago, it is not clear that the Immigration Judge would have jurisdiction to entertain his request for such a waiver.

In 1994, Congress responded to this state of affairs by creating a new section 245(i) of the Act, which authorized a limited departure from the general "inspection and admission" requirement by permitting the Attorney General to grant adjustment of status upon the payment of a surcharge to certain aliens who had entered the United States without inspection or failed to maintain lawful status after having been admitted as nonimmigrants. *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1995, Pub. L. No. 103-317, § 506(b), 108 Stat. 1724, 1765-66 (effective Oct. 1, 1994) ("1995 Appropriations Act"); *see also* H.R. Rep. No. 103-708, at 25, 83-84 (1994) (Conf. Rep.), 1994 WL 444749 (explaining the contours of section 506 of the 1995 Appropriations Act). To encourage qualifying aliens to seek this new form of adjustment, moreover, Congress erected barriers to consular processing by requiring most aliens who had been physically present in the United States to remain abroad at their own expense for at least 90 days before they could receive an immigrant visa. *See* 1995 Appropriations Act § 506(a), 108 Stat. at 1765 (enacting former section 212(o) of the Act, 8 U.S.C. § 1182(o), which would "sunset" on October 1, 1997).

As originally enacted, section 245(i) permitted an alien who had entered the United States without inspection to apply for adjustment of status between October 1, 1994, and October 1, 1997, at which time the provision would "sunset." *See* 1995 Appropriations Act § 506(c), 108 Stat. at 1766. Congress subsequently repealed this October 1, 1997, sunset date, but substituted a new requirement that any application for section 245(i) adjustment had to be based on an approved visa petition that had been filed before January 14, 1998. *See* Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1998, Pub. L. No. 105-119, §111(a)-(b), 111 Stat. 2440, 2458 (enacted Nov. 26, 1997) ("1998 Appropriations Act"). This January 14, 1998, deadline for the filing of qualifying visa petitions was later extended to April 30, 2001. *See* LIFE Act Amendments of 2000, Div. B, tit. XV, Pub. L. No. 106-554, § 1502(a)(1), 114 Stat. 2763 (enacted Dec. 21, 2000) ("LIFE Act Amendments") (effective as if included in the enactment of the Legal Immigration Family Equity Act, tit. XI, Pub. L. No. 106-553, 114 Stat. 2762 (2000) ("LIFE Act")). In 2004, when these proceedings began, the statute provided as follows, in pertinent part:

> § 1255. Adjustment of status of nonimmigrant to that of person admitted for permanent residence
>
> . . . .
>
> (i) Adjustment of status of certain aliens physically present in United States
>     (1) Notwithstanding the provisions of subsections (a) and (c) of this section, an alien physically present in the United States—
>       (A) who—
>           (i) entered the United States without inspection; . . .

. . . ; and
  (B) who is the beneficiary . . . of—
   (i) a petition for classification . . . that was filed with the Attorney General on or before April 30, 2001; . . .
   . . . and
  (C) who, in the case of a beneficiary of a petition for classification . . . that was filed after January 14, 1998, is physically present in the United States on December 21, 2000;
may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence. The Attorney General may accept such application only if the alien remits with such application a sum equaling $1,000 as of the date of receipt of the application . . . .
  (2) Upon receipt of such an application and the sum hereby required, the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence if—
  (A) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and
  (B) an immigrant visa is immediately available to the alien at the time the application is filed.

The reference to the Attorney General in section 245(i) now refers to the Secretary of Homeland Security as well. *See* Homeland Security Act of 2002, tit. XV, Pub. L. No. 107-296, § 1517, 116 Stat. 2135, 2311 (codified at 6 U.S.C. § 557 (Supp. IV 2004)).

### 2. Interplay Between Sections 245(i) and 212(a) of the Act

The fundamental issue before us is one of statutory construction, pertaining to the interplay between sections 212(a)(9)(C) and 245(i) of the Act. We review issues of pure statutory interpretation de novo. 8 C.F.R. § 1003.1(d)(3)(i) (2007). In conducting such a review, the touchstone of our analysis is the plain language of the statute. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)). It is presumed that Congress "'says in a statute what it means and means in a statute what it says there.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)); *see also Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). Thus, we do not look past the unambiguous meaning of statutory language except in those rare circumstances where strict adherence to the text would lead to an absurd or bizarre result that is "'demonstrably at odds with the intentions of its drafters.'" *Demarest v. Manspeaker*, 498 U.S. 184, 190-91 (1991) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *see also Johnson v. Sawyer*, 120 F.3d 1307, 1319 (5th Cir. 1997).

With these principles of statutory construction in mind, we note as a threshold matter that section 245(i)(2)(A) of the Act unambiguously requires an applicant for adjustment of status to prove that he is "admissible to the United States for permanent residence." To satisfy this admissibility requirement, which is echoed in many other provisions of the Act touching upon adjustment of status, the applicant must prove either that he or she is "not inadmissible" under any of the various paragraphs of section 212(a) of the Act, or that any applicable ground of inadmissibility has been waived. 8 C.F.R. § 1245.10(b)(3) (2007). The Immigration Judge concluded that the respondent could not satisfy the admissibility requirement because he is inadmissible under section 212(a)(9)(C)(i)(I) of the Act and is ineligible for any waiver of that ground of inadmissibility.[6]

The respondent counters the Immigration Judge's decision by identifying a contradiction in the language of section 245(i). Specifically, although the respondent acknowledges the admissibility requirement of section 245(i)(2)(A), he points out that section 245(i)(1)(A) affirmatively grants "an alien physically present in the United States . . . who . . . entered the United States without inspection" the right to apply for adjustment of status. As the respondent explains, aliens who have "entered the United States without inspection" can almost never satisfy the admissibility requirement of section 245(i)(2)(A) because their unlawful entry makes them inadmissible under section 212(a)(6)(A)(i) of the Act (pertaining to aliens who are present in the United States without having been admitted or paroled) or section 212(a)(9)(C)(i) of the Act, at issue in this case. In other words, the plain language of the statute seems to make "entry without inspection" both a qualifying and a disqualifying condition for adjustment of status.

The contradiction identified by the respondent certainly does exist, but it has not always existed. In 1994, when section 245(i) was first enacted, "an alien physically present in the United States who . . . entered the United States without inspection" was not considered to be inadmissible (or "excludable," to use the parlance of the time) under section 212(a) of the Act. Instead, such an alien was considered to be "deportable" under former section 241(a)(1)(B) of

---

[6] The United States Court of Appeals for the Fifth Circuit, in whose jurisdiction this proceeding arises, has extended administrative deference to an unpublished decision of this Board that embodied much the same rationale as that announced by the Immigration Judge in this case. *Mortera-Cruz v. Gonzales*, 409 F.3d 246, 254-56 (5th Cir.), *cert. denied*, 546 U.S. 1031 (2005).

the Act, 8 U.S.C. § 1251(a)(1)(B) (1994), a classification that did not prevent the alien from satisfying the "admissibility" requirement of section 245(i)(2)(A). Moreover, in 1994 the immigration law drew no formal distinction between an alien who had "entered without inspection" once and one who had done so repeatedly; both the first-time offender and the recidivist would have been deportable under former section 241(a)(1)(B) only. The only exception to this rule pertained to aliens who had reentered the United States without inspection after having previously been deported. Depending on the circumstances surrounding the original deportation or the amount of time that had elapsed between the deportation and the reentry, such an alien would have been inadmissible even in 1994. *See* former sections 212(a)(6)(A), (B) of the Act, 8 U.S.C. §§ 1182(a)(6)(A), (B) (1994).

This legal landscape was fundamentally altered upon enactment of the IIRIRA, which became effective for present purposes on April 1, 1997. *See* IIRIRA § 309(a), 110 Stat. at 3009-625. Among many other things, the IIRIRA did away with the "entered without inspection" deportability ground and recharacterized aliens who had previously been "deportable" under that ground as being "inadmissible." Specifically, section 301(c) of the IIRIRA, 110 Stat. at 3009-578, created a general ground of inadmissibility applicable to all aliens who are present in the United States without having been admitted or paroled (i.e., the section 212(a)(6)(A)(i) ground), while section 301(b) of the IIRIRA, 110 Stat. at 3009-575 to 3009-578, created the section 212(a)(9) grounds of inadmissibility at issue in the present case, which apply more narrowly to aliens who seek admission or evade inspection after having committed prior immigration violations. It is these amendments that gave rise to the present tension between sections 245(i)(1)(A) and (2)(A) of the Act.

Shortly before the IIRIRA went into effect, the General Counsel of the former INS sought to forestall the potential consequences of this contradiction by issuing a policy memorandum that expressed the view that section 245(i) adjustment would remain available to the large class of aliens who were about to become inadmissible under section 212(a)(6)(A)(i) of the Act. *See* Memorandum from David Martin, INS General Counsel, to Michael L. Aytes, Ass't Comm'r, Office of Benefits (Feb. 19, 1997), *reprinted in* 74 Interpreter Releases, No. 11, March 24, 1997, app. II at 516-22. According to this memorandum, section 245(i)(1)(A), which made adjustment available to aliens who had "entered without inspection," falls within "the ambit of the 'otherwise provided' savings clause of section 212(a) of the Act," and essentially constitutes an implicit waiver for aliens who are inadmissible under section 212(a)(6)(A)(i). *Id.* at 518-19. This "savings clause," which is included in the prefatory language of section 212(a) of the Act, states that "*[e]xcept as otherwise provided in this Act*, aliens who are inadmissible under the following

paragraphs are ineligible to receive visas and ineligible to be admitted to the United States." Section 212(a) of the Act (emphasis added).

On appeal, the respondent relies on this same "savings clause" to argue that inadmissibility under section 212(a)(9)(C)(i)(I) of the Act should not be an obstacle to section 245(i) adjustment. According to the respondent, even if his surreptitious reentry into the United States after a prior period of unlawful presence of more than 1 year would ordinarily render him "ineligible to be admitted to the United States" for permanent residence, section 245(i)(1)(A) "otherwise provide[s]" within the meaning of the savings clause because it makes adjustment of status available to aliens, such as himself, who have "entered the United States without inspection." Indeed, the respondent contends that inadmissibility under section 212(a)(9)(C) arises from the precise circumstance that section 245(i) was intended to forgive, that is, unlawful presence in the United States. Thus, according to his argument, if aliens who are inadmissible under section 212(a)(9)(C) were disqualified from adjustment, section 245(i) would be rendered superfluous, because virtually all aliens who have "entered the United States without inspection" have also accrued the 1 year of "unlawful presence" sufficient to make them inadmissible under section 212(a)(9)(C)(i)(I).

Shortly after the IIRIRA went into effect, the former INS issued additional policy guidance that espoused a position directly contrary to that presently advanced by the respondent. *See* Memorandum from Louis D. Crocetti, Jr., INS Assoc. Comm'r, Office of Examinations, to INS Officials (May 1, 1997), *reprinted in* 2 Bender's Immigr. Bull. 450, 452 (June 1, 1997) (reiterating that inadmissibility under section 212(a)(6)(A)(i) does not disqualify aliens from seeking adjustment of status, but also providing that aliens subject to sections 212(a)(9)(B) and (C) of the Act "will be deemed inadmissible under that section of the Act for purposes of adjustment of status"). This additional memorandum contains no substantial analysis of the statutory language of section 245(i), however, and several courts have therefore found it unpersuasive when compared with the lengthier discussion set forth in the February 1997 General Counsel's Memorandum. *Acosta v. Gonzales*, 439 F.3d 550, 554 (9th Cir. 2006) (citing *Perez-Gonzalez v. Ashcroft*, 379 F.3d 783, 792-93 & n.8 (9th Cir. 2004)); *Padilla-Caldera v. Gonzales*, 426 F.3d 1294, 1300-01 (10th Cir.), *amended and superseded on reh'g*, 453 F.3d 1237, 1244 (10th Cir. 2005).

For a number of reasons, we find the respondent's position with respect to the "savings clause" to be untenable. Indeed, we disagree with the analysis embodied in the former INS' February 1997 Memorandum relating to the

interplay between section 245(i) and section 212(a)(6)(A)(i).[7]  In our view, section 245(i) adjustment remains available to aliens inadmissible under section 212(a)(6)(A)(i) only because a contrary interpretation would render the language of section 245(i) so internally contradictory as to effectively vitiate the statute, an absurd result that Congress is presumed not to have intended. *See Demarest v. Manspeaker*, *supra*.  However, the fact that a statute's plain language may lead to absurd results in some cases does not permit us to disregard that language in other contexts where no such absurd consequence would follow.  And as we shall explain, applying the admissibility requirement of section 245(i)(2)(A) to aliens who are inadmissible under section 212(a)(9)(C)(i)(I) does not have absurd consequences.

The so-called savings clause on which the respondent relies erects a default presumption of inadmissibility for any alien described in the various paragraphs of section 212(a), but it allows that presumption to be overcome where the Act "provides" otherwise.  In the context of statutory drafting, the phrase "except as provided otherwise in this Act" most naturally denotes an explicit proviso or stipulation that supplies a condition, exception, or limitation on other statutory language.  Yet the respondent has identified no actual provision of "this Act" that can be construed as annulling or waiving the admissibility requirement of section 245(i)(2)(A) as it relates to aliens described in section 212(a)(9)(C).  Instead, the respondent wants us to *infer* that section 212(a)(9)(C) is inapplicable because, in his view, a contrary interpretation would defeat the remedial purposes of section 245(i) adjustment. We find no justification for drawing such an inference.

The respondent contends that the language of section 245(i)(1)(A) of the Act, which makes adjustment of status available to aliens who have "entered the United States without inspection," would be rendered superfluous if such relief were denied to the class of aliens described in section 212(a)(9)(C)(i)(I). However, this argument proceeds from the mistaken premise that the classes of aliens described in sections 245(i)(1)(A) and 212(a)(9)(C)(i)(I) are coextensive. They are not.  Section 212(a)(9)(C)(i)(I) does not apply to any alien who has "entered the United States without inspection," or even to any alien who has been unlawfully present in the United States for more than 1 year.  Instead, it applies only to that subset of such aliens who are *recidivists*, that is, those who have departed the United States after accruing an aggregate period of "unlawful presence" of more than 1 year and who *thereafter* entered or attempted to reenter

---

[7] DHS policy memoranda that have not been embodied in regulations are not binding on the Immigration Judges or this Board, although the policies contained in such memoranda can be adopted by the Board when appropriate.  *Matter of M/V Saru Meru*, 20 I&N Dec. 592, 595-96 (BIA 1992) (citing *Matter of Cavazos*, 17 I&N Dec. 215 (BIA 1980)).

the United States unlawfully. *See Matter of Rodarte*, *supra*, at 909 (explaining that the various subparagraphs of section 212(a)(9) are concerned with punishing and preventing recidivist immigration violations, and not mere unlawful presence).

This interpretation of section 212(a)(9)(C)(i)(I) springs from the statutory language taken in context and is amply supported by both the title of the statute and its legislative history. Section 212(a)(9)(C) is entitled "Aliens unlawfully present after *previous* immigration violations." (Emphasis added.) This language clearly reflects that Congress was concerned with recidivists, not first-time immigration violators. *INS v. Nat'l Center for Immigrants' Rights*, 502 U.S. 183, 189 (1991) (stating that "the title of a statute or section can aid in resolving an ambiguity in the legislation's text" and citing *Mead Corp. v. Tilley*, 490 U.S. 714, 723 (1989), and *FTC v. Mandel Bros., Inc.*, 359 U.S. 385, 388-89 (1959)). Moreover, with respect to the language that would subsequently be codified at section 212(a)(9)(C), the Conference Committee Report issued at the time of the IIRIRA's enactment provides as follows:

> [A]n alien who has been present unlawfully in the United States for more than 1 year or has been ordered removed from the United States, and who *subsequently* enters or attempts to enter the United States without being lawfully admitted, is permanently barred from admission. Such an alien may be admitted not earlier than 10 years after the alien's last departure from the United States, but only if the Attorney General gives prior consent to the alien's reapplying for admission.

H.R. Rep. No. 104-828, at 208 (1996) (Conf. Rep.), 1996 WL 563320 (emphasis added). It is the entry or attempted entry of an alien *subsequent to* his accrual of more than 1 year of unlawful presence that triggers inadmissibility under section 212(a)(9)(C)(i)(I), and not mere unlawful presence for more than 1 year.

Hence, from the perspective of section 245(i), no easy correlation exists between the section 212(a)(9)(C) inadmissibility grounds at issue here and the section 212(a)(6)(A)(i) ground that was the subject of the February 1997 Memorandum of the former INS' General Counsel. Although no alien who is inadmissible under section 212(a)(6)(A)(i) alone would have been excludable prior to the effective date of the IIRIRA, the same cannot be said for many aliens who are currently inadmissible under section 212(a)(9)(C). Specifically, prior to the IIRIRA many aliens who are presently inadmissible under section 212(a)(9)(C) by virtue of having reentered the United States after removal would have been excludable under former section 212(a)(6)(B) of the Act and therefore, by extension, ineligible for section 245(i) adjustment. Thus, were we to declare the section 212(a)(9)(C) grounds of inadmissibility "waived" by operation of the savings clause, we would in effect be making section 245(i) adjustment available to a whole new class of aliens who had *never* been

eligible for it. We decline to take such an unwarranted leap. And while we recognize that the respondent did not reenter the United States after a prior removal, the fact is that Congress drafted section 301(b) of the IIRIRA, 110 Stat. at 3009-577, to define a *unitary* ground of inadmissibility that may be predicated on various types of conduct. The provision draws no substantive distinction between aliens who have reentered the United States illegally after removal and those who, like the respondent, have done so after committing a prior immigration violation for which they managed to avoid removal. The provision makes both groups inadmissible permanently, and it precludes either group from procuring permission to be readmitted for at least 10 years after their last departure from the United States. Where Congress has not seen fit to distinguish between these two groups for purposes of inadmissibility, we see no justification for distinguishing between them as candidates for section 245(i) adjustment.

Furthermore, we deem it of crucial importance that in every other case where Congress has extended eligibility for adjustment of status to inadmissible aliens (in other words, where Congress has "otherwise provide[d]" within the meaning of the savings clause) it has done so unambiguously, either by negating certain grounds of inadmissibility outright or by providing for discretionary waivers of inadmissibility, or both. *See* sections 209(c), 210(a)(1)(C), (c)(2)(A), 245(h)(2)(A), 245A(b)(1)(C)(i), (d)(2)(A) of the Act, 8 U.S.C. §§ 1159(c), 1160(a)(1)(C), (c)(2)(A), 1255(h)(2)(A), 1255a(b)(1)(C)(i), (d)(2)(A) (2000). Indeed, even in those other instances where Congress has enacted special remedial legislation extending adjustment of status to aliens who are unlawfully present in the United States, it has seen the necessity of *expressly negating* the applicability of section 212(a)(9)(C).

In 1997 and 1998, for instance, Congress made adjustment of status available to certain Cuban, Central American, and Haitian aliens who were physically present in the United States but not otherwise eligible to normalize their status, usually because their presence in this country was unlawful. *See* Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105-100, § 202, 111 Stat. 2193, 2193 (1997) ("NACARA"); Haitian Refugee Immigration Fairness Act of 1998, tit. IX, Pub. L. No. 105-277, § 902, 112 Stat. 2681-538, 2681-538 ("HRIFA"). As originally enacted, the NACARA and HRIFA contained provisions expressly nullifying a number of inadmissibility grounds related to unlawful presence and unlawful employment because it was evident that such grounds would prevent most potential applicants from proving that they were "otherwise admissible to the United States for permanent residence." NACARA § 202(a)(1)(B), 111 Stat. at 2193; HRIFA § 902(a)(1)(B), 112 Stat. at 2681-538. Yet section 212(a)(9)(C) was not initially included among the waivable inadmissibility grounds.

As the Government began to implement the NACARA and HRIFA adjustment programs, however, it became clear that a number of potential applicants were unable to qualify for relief, either because they were inadmissible under section 212(a)(9)(C) or because they were subject to having prior removal orders reinstated against them, or both. Congress addressed this perceived problem in December 2000 by promulgating sections 1505(a) and (b) of the LIFE Act Amendments, which provided the Attorney General with discretionary authority to waive the section 212(a)(9)(C) grounds of inadmissibility for NACARA and HRIFA adjustment applicants. NACARA § 202(a)(2), 111 Stat. at 2193-94; HRIFA § 902(a)(2), 112 Stat. at 2681-538; *see also* 8 C.F.R. §§ 1245.13(c)(2), 1245.15(e)(3) (2007).

That Congress deemed it necessary to provide for such waivers in the NACARA and HRIFA contexts is strong evidence that Congress understood an alien's inadmissibility under section 212(a)(9)(C) to be a barrier *even* to those forms of adjustment that were reserved for aliens unlawfully present in the United States. Furthermore, the enactment of section 1505 of the LIFE Act Amendments demonstrates that when Congress wants to make adjustment of status available to aliens despite their inadmissibility under section 212(a)(9)(C), it knows how to do so. Indeed, it is particularly significant that Congress chose the LIFE Act Amendments as its vehicle for promulgating these discretionary waivers of section 212(a)(9)(C). Section 1505 of those amendments, discussed above, shows that Congress was attentive to the fact that inadmissibility under section 212(a)(9)(C) was an impediment to adjustment that needed to be overcome, if at all, by means of affirmative legislation. Yet section 1502 of those very same amendments, which materially modified section 245(i) by extending the filing deadline for qualifying visa petitions, contains no comparable language removing section 212(a)(9)(C) as an obstacle to section 245(i) adjustment. *See also* H.R. Rep. No. 106-1048, at 230 (2001), 2001 WL 67919; *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1167-68 (10th Cir. 2004). As the Supreme Court has explained, "'"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."'" *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972))). We see no reason why this presumption should not apply here.

The respondent makes much of the fact that section 245(i)(1)(C) requires that any principal beneficiary of a visa petition filed after January 14, 1998, must prove that he was physically present in the United States on

December 21, 2000, in order to qualify for section 245(i) adjustment.[8] According to the respondent, this presence requirement (which was added by the LIFE Act Amendments), gives rise to a negative inference that Congress intended to permit aliens whose visa petitions were filed on or before January 14, 1998, to adjust status even if they had been outside the United States on December 21, 2000. And therefore, the respondent asserts, since any alien absent from the United States on December 21, 2000, must necessarily reenter the country in order to adjust status under section 245(i), it follows that Congress must necessarily have intended to permit such an alien to do so.

We acknowledge that this argument has some force, but in the final analysis we remain unpersuaded. First, the legislative purpose of the December 21, 2000, physical presence requirement was not to draw distinctions between existing beneficiaries of qualifying visa petitions, but to prevent aliens who had *never* been beneficiaries of such petitions from viewing the renewed availability of section 245(i) adjustment as an invitation to enter the United States unlawfully. *See* 146 Cong. Rec. S11850, S11851-52 (daily ed. Dec. 15, 2000), 2000 WL 1847188 (Joint Memorandum Concerning the Legal Immigration Family Equity Act of 2000 and the LIFE Act Amendments of 2000 submitted by Senators Kennedy and Abraham) ("The function of this [physical presence] requirement is to make sure that the renewed availability of section 245(i) does not operate to encourage anyone to violate our immigration laws."). We cannot reasonably interpret statutory language that was expressly designed to prohibit one class of aliens from violating the immigration law as somehow countenancing such violations by a different class of aliens.

Moreover, any suggestion that Congress *assumed* section 245(i) adjustment to apply to recidivist immigration violators is belied by its enactment of former section 212(o) of the Act, which was created by means of the same 1994 legislation that created section 245(i). *See* 1995 Appropriations Act § 506(a), 108 Stat. at 1765. Former section 212(o) made most aliens who had been physically present in the United States inadmissible for 90 days if they departed, and it was aimed quite specifically at discouraging potential beneficiaries of section 245(i) adjustment from leaving the United States. Indeed, the whole purpose of section 245(i) adjustment was to keep families together by permitting aliens then inside the United States to remain here, rather than having to travel abroad to acquire immigrant visas. Thus, it would

---

[8] Pursuant to section 111(a) of the 1998 Appropriations Act, 111 Stat. at 2458, section 245(i) adjustment was available to any alien whose qualifying visa petition had been filed on or before January 14, 1998. The LIFE Act Amendments extended this deadline to April 30, 2001.

be strange indeed to suppose that Congress would have been indifferent to immigration violations undertaken in defiance of that purpose.

Furthermore, to the extent that the December 21, 2000, physical presence requirement creates tension in the language of section 245(i), that tension does not lead to any absurd contradiction that would allow us to discount the ordinary meaning of the admissibility requirement. Specifically, although it may be true that section 245(i) only makes sense if *some* aliens who were outside the United States on December 21, 2000, are permitted to apply for adjustment, it does not logically follow that such permission must be granted to *all* aliens who were outside the United States on that date. After all, even if the aliens described by section 212(a)(9)(C) are disqualified from section 245(i) adjustment, several other classes of aliens who were outside the United States on December 21, 2000, can still qualify for such relief if they are the beneficiaries of visa petitions filed before January 14, 1998. These classes include aliens who entered the United States without admission after December 21, 2000, but who had no prior period of unlawful presence, as well as aliens who entered the United States unlawfully on numerous occasions but who never accrued the requisite prior period of unlawful presence, typically because their last departure from the United States occurred less than 1 year after the effective date of the IIRIRA. The point is that to give life to the December 21, 2000, physical presence requirement, one need not do violence to the plain language of the admissibility requirement of section 245(i)(2)(A), e.g., by simply declaring it inapplicable to the class of aliens described in section 212(a)(9)(C)(i)(I).

## IV. CONCLUSION

In view of the fact that section 212(a)(9)(C)(i)(I) of the Act pertains only to recidivist immigration violators, we find little merit in the respondent's argument–which seems to have been accepted by the Ninth and Tenth Circuits in *Acosta v. Gonzales*, *supra*, and *Padilla-Caldera v. Gonzales*, *supra*, respectively–that it would be incompatible with the remedial purpose of section 245(i) to make adjustment of status unavailable to such aliens. This emphasis on the remedial purpose of section 245(i) unduly discounts both the clear preclusive language of the admissibility requirement of section 245(i)(2)(A)–language which Congress has notably declined to mitigate despite having done so in analogous contexts–and the countervailing purpose underlying section 212(a)(9)(C), which is "to compound the adverse consequences of immigration violations by making it more difficult for individuals who have left the United States after committing such violations to be lawfully readmitted thereafter." *Matter of Rodarte*, *supra*, at 909. Indeed, one of the chief purposes of the IIRIRA amendments of 1996 was to

overcome the problem of recidivist immigration violations by increasing resources for border enforcement while escalating the punitive consequences, both civil and criminal, of illegal reentry. *See* IIRIRA §§ 105(a)(2), 301(b)(1), 303(a), 305(a)(3), (b)(3), 324(a), 326, 332, 353(b), 110 Stat. at 3009-556, 3009-576, 3009-585, 3009-598, 3009-606, 3009-629, 3009-630, 3009-634, 3009-641; *see also* H.R. Rep. No. 104-828, at 199-200, 208, 216, 219, 225. The enactment of these multifarious provisions to expedite the detection, deterrence, and punishment of recidivist immigration violators reflects a clear congressional judgment that such repeat offenses are a matter of special concern and that recidivist immigration violators are more culpable, and less deserving of leniency, than first-time offenders. *Mortera-Cruz v. Gonzales*, 409 F.3d 246, 255-56 (5th Cir.), *cert. denied*, 546 U.S. 1031 (2005). Thus, although implementing the admissibility requirement of section 245(i)(2)(A) of the Act in accordance with its plain language does have the effect of making adjustment of status unavailable to those repeat immigration violators who are inadmissible under section 212(a)(9)(C)(i)(I), we perceive nothing "bizarre" or "absurd" in this result. On the contrary, such an outcome seems perfectly consonant with the language, structure, and purpose of the Act, taken as a whole. Accordingly, we hold that aliens who are inadmissible under section 212(a)(9)(C)(i)(I) of the Act cannot qualify for section 245(i) adjustment, absent a waiver of inadmissibility.[9]

In conclusion, we find no reversible error in the Immigration Judge's determinations that the respondent is inadmissible to the United States under section 212(a)(9)(C)(i)(I) of the Act and that his inadmissibility under that section makes him ineligible for adjustment of status under section 245(i) of the Act by precluding him from demonstrating that he is "admissible to the United States for permanent residence." Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** Pursuant to the Immigration Judge's order and conditioned upon compliance with conditions set forth by the Immigration Judge and the statute, the respondent is permitted to voluntarily depart from the United States, without expense to the Government, within 60 days from the date of this order or any extension beyond that time as may be granted by the

---

[9] We need not decide here whether to apply our holding in the Ninth and Tenth Circuits. *See Nat'l Cable & Telecommc'n. Ass'n v. Brand X Internet Serv.*, 545 U.S. 967, 982 (2005) (holding that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion").

Department of Homeland Security.  *See* section 240B(b) of the Act, 8 U.S.C. § 1229c(b) (2000); 8 C.F.R. §§ 1240.26(c), (f) (2007).  In the event the respondent fails to so depart, the respondent shall be removed as provided in the Immigration Judge's order.

**NOTICE:**  If the respondent fails to depart the United States within the time period specified, or any extensions granted by the DHS, the respondent shall be subject to a civil penalty of not less than $1,000 and not more than $5,000, and shall be ineligible for a period of 10 years for any further relief under section 240B and sections 240A, 245, 248, and 249 of the Act, 8 U.S.C. §§ 1229b, 1255, 1258, and 1259 (2000).  *See* section 240B(d) of the Act.