**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 10, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RODOLFO MOLINA MUNOZ,

     Petitioner,

v.

LORETTA E. LYNCH, United States
Attorney General,[†]

     Respondent.

No. 14-9575
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS, McHUGH**, and **MORITZ,** Circuit Judges.
_____

     Petitioner Rodolfo Molina Munoz has been ordered removed for unlawful

presence in the United States. He does not challenge his removability, but he does

seek review of an order of the Board of Immigration Appeals (the BIA) finding that

he is ineligible for an adjustment of status that would forestall his removal. We agree

with Mr. Munoz that his reliance on this court's precedent in applying for an

adjustment of status precludes the BIA from applying its own subsequent decision

---

[†] In accordance with Federal Rule of Appellate Procedure 43(c)(2), Loretta E.
Lynch is substituted for Eric H. Holder Jr. as the respondent in this action.

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
10th Circuit Rule 32.1.

retroactively to Mr. Munoz's application. We therefore grant Mr. Munoz's petition for review and remand the case to the BIA for further proceedings consistent with this decision.

## I.    BACKGROUND

The pertinent facts are not in dispute. Mr. Munoz resided illegally in the United States beginning sometime in 1971. He briefly departed the United States and returned without inspection in October 2003.

The dispute in this case centers around two conflicting provisions of the Immigration and Nationality Act (the INA). One provision of the INA, 8 U.S.C. § 1182(a)(9)(C)(i)(I), deems inadmissible those aliens, like Mr. Munoz, who remain in the United States unlawfully for more than one year, leave the country, and subsequently enter or attempt to reenter without being admitted. Another provision, 8 U.S.C. § 1255(i), invests the Attorney General with discretion to adjust the status of an alien to that of a lawful permanent resident if the alien meets certain criteria, including that the alien is currently admissible. The INA does not expressly state whether aliens who meet the criteria set forth in § 1255(i) are nevertheless ineligible for adjustment of status if they fall within the category of aliens described in § 1182(a)(9)(C)(i)(I).

In 2005, this court decided *Padilla-Caldera v. Gonzales* (*Padilla-Caldera I*), 453 F.3d 1237 (10th Cir. 2005), holding that an alien who would otherwise be deemed inadmissible by § 1182(a)(9)(C)(i)(I) may nonetheless seek adjustment of status under § 1255(i). *Padilla-Caldera I*, 453 F.3d at 1244. On April 30, 2007, in

2

reliance upon *Padilla-Caldera I*, Mr. Munoz applied for adjustment of his status to lawful permanent resident status.

While Mr. Munoz's application for adjustment of status was pending, the BIA decided *In re Briones*, 24 I. & N. Dec. 355 (BIA 2007). In *Briones*, the BIA concluded, contrary to our *Padilla-Caldera I* decision, that an alien who is inadmissible under § 1182(a)(9)(C)(i)(I) cannot qualify for an adjustment of status under § 1255(i) absent a waiver of inadmissibility (which is not at issue here). 24 I. & N. Dec. at 370–71. After significant delay, the United States Citizenship and Immigration Services denied Mr. Munoz's application for adjustment of status in light of *Briones*. The Department of Homeland Security then placed Mr. Munoz in removal proceedings. Mr. Munoz admitted to the allegations against him and conceded removability but renewed his application for adjustment of status on the ground that *Padilla-Caldera I* controlled his case.

While these removal proceedings were pending, this court decided *Padilla-Caldera v. Holder* (*Padilla-Caldera II*), 637 F.3d 1140 (10th Cir. 2011), in which we deferred to the BIA's construction of the relevant statutory provisions as mandated by *National Cable & Telecommunications Ass'n v. Brand X Internet Services*, 545 U.S. 967 (2005). *Padilla-Caldera II*, 637 F.3d at 1152–53. We accordingly reversed the rule announced in *Padilla-Caldera I*, instead holding inadmissibility under § 1182(a)(9)(C)(i)(I) precludes an adjustment of status under § 1125(i). *Id.* In light of *Briones* and *Padilla-Caldera II*, the Immigration Judge pretermitted Mr. Munoz's application and ordered him removed from the United States. Mr. Munoz appealed to

the BIA, which dismissed his appeal, holding *Padilla-Caldera II* and *Briones* governed his case. This petition for review followed.

## II.    DISCUSSION

Mr. Munoz argues the BIA improperly applied *Briones* retroactively to his application for adjustment of status. We agree. We recently decided *De Niz Robles v. Lynch*, --- F.3d ---, No. 14-9568, 2015 WL 6153073 (10th Cir. Oct. 20, 2015), in which we held that the BIA's decision in *Briones* could not be applied retroactively to an alien situated similarly to Mr. Munoz. *De Niz Robles* controls the outcome here.

As a general rule, legislative enactments are given only prospective effect, while judicial decisions are also given retroactive effect. *Id.* at *3–4. Newly promulgated agency rules, due their affinity to legislation, are also given only prospective effect. *Id.* at *5. *De Niz Robles* addressed the question of whether an agency *adjudication* like the BIA's decision in *Briones*, and our subsequent deferral to that decision in *Padilla-Caldera II*, should be given retroactive or only prospective effect. *Id.* at *6–7. We concluded the BIA's decision in *Briones* "should be treated no different[ly] from a new agency rule announced by notice-and-comment rulemaking . . . for purposes of retroactivity analysis." *Id.* at *7 (alteration and omission in original) (internal quotation marks omitted).

Thus, *De Niz Robles* instructs us to "balance[] the costs and benefits associated with giving retroactive effect to agency adjudications" on a case-by-case basis through application of the five-factor test derived from *Stewart Capital Corp. v.*

4

*Andrus*, 701 F.2d 846 (10th Cir. 1983). *Id.* at \*10 (alteration in original) (internal quotation marks omitted).

> These factors are (1) whether the case is one of first impression; (2) whether the new rule is an abrupt departure from well-established practice or merely an attempt to fill a void in an unsettled area of law; (3) whether and to what extent the party against whom the new rule is applied relied on the former rule; (4) whether and to what extent the retroactive order imposes a burden on a party; and (5) whether and to what extent there is a statutory interest in applying a new rule despite reliance of a party on an old standard.

*Farmers Tel. Co. v. F.C.C.*, 184 F.3d 1241, 1251 (10th Cir. 1999) (internal quotation marks and brackets omitted).

*De Niz Robles* applied these factors and thus provides the answer to many of these inquiries with respect to the retroactive application of *Briones*. There, we concluded the first factor is generally irrelevant in the context of removal proceedings. *De Niz Robles*, 2015 WL 6153073, at \*10. We also rejected the BIA's argument that it was merely filling a void in the law and concluded *Briones* was an "abrupt departure" from existing judicial precedent. *Id*. Regarding the fourth and fifth factors, we determined these factors addressed the "balance of comparative harms" between requiring the BIA to consider an application for adjustment of status and depriving an alien of the opportunity to have that application considered—resulting in the alien's certain deportation—and concluded these factors weigh heavily in favor of the alien in this context. *Id*. at \*12. The same reasoning applies to these factors in Mr. Munoz's case, and we accordingly conclude they weigh against retroactive application of *Briones* here.

5

We are thus left with only the third factor, evaluating Mr. Munoz's individual reliance on our decision in *Padilla-Caldera I*. With respect to this factor, there is little doubt Mr. Munoz relied on our decision in *Padilla-Caldera I* at the time he filed his application for adjustment of status. After we decided *Padilla-Caldera I* and before the BIA decided *Briones*, an alien in Mr. Munoz's position "possessed two lawful options to secure permanent residency in this country—file a petition for adjustment of status under *Padilla-Caldera I* or leave the country and begin the waiting period." *Id.* at *11. Mr. Munoz "relied on *Padilla-Caldera I* in choosing the first course." *See id.* The BIA argues Mr. Munoz's reliance on *Padilla-Caldera I* was "risky at best" because the judicial interpretation of these statutes was "subject to [BIA] revision." But we rejected in *De Niz Robles* the argument that "a party cannot reasonably rely on a judicial decision whenever its interpretation of the law is foreseeably subject to 'revision' by an executive agency." *Id.* Rather, we concluded, even where an agency or the legislature may foreseeably reenter the field and revise the statute, "the people may rely on the law as it is, so long as it is, including any of its associated judicial interpretations." *Id.*

The BIA also calls into question Mr. Munoz's reliance interest by arguing the "detriment and burden he has suffered is the impairment of his ability to avoid the consequences of his continuing immigration violation—an impairment which merits little solicitude." But we observed in *De Niz Robles* that *Padilla-Caldera I* did not purport to invest aliens with a right to remain in the country illegally. *Id.* at *2 n.2. Rather, we considered the right at issue to be the "limited statutory right" "to file a

6

petition for adjustment of status" and thereby seek "the *possibility* of relief." *Id.* We conclude that Mr. Munoz seeks to vindicate, and the BIA seeks to retroactively withdraw, this same right. We therefore reject the argument Mr. Munoz has not suffered a detriment adequate to support his claim of reliance on *Padilla-Caldera I.*

We conclude the relevant factors weigh against the retroactive application of *Briones* to Mr. Munoz's application for adjustment of status. We therefore grant Mr. Munoz's petition for review of the BIA's decision and remand for further proceedings.

## III.  CONCLUSION

The petition for review is granted and the case remanded to the BIA for further proceedings consistent with this decision.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

7