**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID CORREO-RUIZ and MIGUEL CORREO-RUIZ, *Petitioners*, v. LORETTA E. LYNCH, Attorney General, *Respondent*. | No. 12-72126 Agency Nos. A096-152-845 A096-152-846 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 5, 2015—Portland, Oregon

Filed December 30, 2015

Before: Alex Kozinski, Marsha S. Berzon,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Watford

## SUMMARY[*]

### Immigration

The panel granted David and Miguel Correo-Ruiz's petition for review of the Board of Immigration Appeals' decision finding the brothers ineligible for adjustment of status because they were inadmissible pursuant to 8 U.S.C. § 1182(a)(9)(C) under a retroactive application of *Matter of Briones*, 24 I. & N. Dec. 355 (BIA 2007).

The panel applied the balancing test adopted in *Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc), to determine whether *Briones* could be retroactively imposed upon the brothers' applications for adjustment, filed when *Acosta v. Gonzales*, 439 F.3d 550 (9th Cir. 2006), which *Garfias-Rodriguez* overruled, would have applied. The panel held that the brothers could establish a legitimate reliance interest on pre-*Briones* law by showing they incurred legal expenses pursuing adjustment during the 21-month period between *Acosta* and *Briones*. Because the record did not reflect expenses the brothers incurred during the period, the panel remanded to the BIA with instructions to allow them to supplement the record and to assess in the first instance under *Garfias-Rodriguez* whether *Briones* may be applied retroactively.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Stephen W. Manning (argued), Jennifer M. Rotman, Jessica M. Boell, Immigrant Law Group PC, Portland, Oregon, for Petitioners.

Anh-Thu P. Mai-Windle (argued), Senior Litigation Counsel; Stuart F. Delery, Acting Assistant Attorney General; Stephen J. Flynn, Assistant Director, Office of Immigration Litigation, United States Department of Justice, Civil Division, Washington, D.C., for Respondent.

## OPINION

WATFORD, Circuit Judge:

Petitioners David Correo-Ruiz and Miguel Correo-Ruiz are citizens of Mexico who entered the United States unlawfully in 1995. In 2002, they applied for adjustment of status under a provision of the immigration laws permitting certain non-citizens to become lawful permanent residents. *See* 8 U.S.C. § 1255(i). In 2007, while petitioners' applications were pending, the Board of Immigration Appeals (BIA) held that individuals in petitioners' shoes are categorically ineligible for relief under § 1255(i). *In re Briones*, 24 I. & N. Dec. 355 (BIA 2007). In *Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc), we upheld the BIA's interpretation of the law and adopted a five-factor test for determining whether *Briones* may be applied retroactively in a given case. We are asked to decide whether *Briones* may be applied retroactively to the petitioners in this case.

I

Congress enacted 8 U.S.C. § 1255(i) in 1994. Pub. L. No. 103–317, § 506(b), 108 Stat. 1724, 1765–66. The statute, as amended, allows non-citizens who entered the United States unlawfully to apply for adjustment of status to that of a lawful permanent resident if certain conditions are met. One of those conditions is that an applicant must be "admissible to the United States for permanent residence." § 1255(i)(2)(A).

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, known as IIRIRA. Pub. L. No. 104–208, Div. C, 110 Stat. 3009–546. Of particular relevance here, IIRIRA renders "inadmissible" any non-citizen who, after being unlawfully present in the United States for more than one year, reenters the United States without being lawfully admitted. § 1182(a)(9)(C)(i)(I). (For ease of reference, we will refer to this provision as § 1182(a)(9)(C).) Neither the text of IIRIRA nor its legislative history explains whether an individual who is inadmissible under this provision remains eligible for relief under § 1255(i).

We confronted the tension between §§ 1255(i) and 1182(a)(9)(C) in *Acosta v. Gonzales*, 439 F.3d 550 (9th Cir. 2006), *overruled by Garfias-Rodriguez*, 702 F.3d at 513–14. We held that non-citizens who are inadmissible under § 1182(a)(9)(C) nonetheless remain eligible for relief under § 1255(i). *Id.* at 553–56. We issued that decision in February 2006. Twenty-one months later, however, the BIA disagreed with our interpretation of the law. The BIA held in *Briones* that anyone who is inadmissible under § 1182(a)(9)(C) is ineligible for relief under § 1255(i). 24 I. & N. Dec. at 370–71.

For several years after the BIA's decision in *Briones*, things stood in limbo in our circuit, as it was unclear whether our decision in *Acosta* or the BIA's decision in *Briones* controlled. In 2012, we resolved that issue in *Garfias-Rodriguez*, where we held that the BIA's interpretation of § 1255(i) is binding under *National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967 (2005). We accordingly overruled *Acosta* and adopted *Briones* as the law of the circuit. 702 F.3d at 513–14. Under current law, anyone rendered inadmissible under § 1182(a)(9)(C) is categorically precluded from obtaining adjustment of status under § 1255(i).

## II

The Correo brothers unlawfully entered the United States from Mexico in 1995. After living in the United States for more than one year, both left the United States and returned a short time later without being lawfully admitted. As a result, they are inadmissible under § 1182(a)(9)(C).

In 2002, the Correo brothers applied for adjustment of status under § 1255(i). The United States Citizenship and Immigration Services (USCIS) held the brothers' applications in abeyance for several years, given the legal uncertainty over whether individuals rendered inadmissible under § 1182(a)(9)(C) remained eligible for relief under § 1255(i). By the time USCIS acted on the brothers' applications in 2009, however, the BIA had decided *Briones*. USCIS denied their applications and initiated removal proceedings against them.

At the ensuing hearing before an immigration judge (IJ), the Correo brothers renewed their applications for adjustment

of status under § 1255(i), notwithstanding the BIA's unfavorable law. The IJ held that under *Briones* the brothers were ineligible for relief and ordered them removed to Mexico if they did not voluntarily depart. The BIA upheld the IJ's decision.

## III

The Correo brothers concede that if we apply the law as it currently stands—*i.e.*, the rule established in *Briones*—they lose. They are inadmissible under § 1182(a)(9)(C), and *Briones* squarely holds that such individuals are ineligible for relief under § 1255(i). The brothers argue, however, that *Briones* should not be applied retroactively to them.

In *Garfias-Rodriguez*, we applied a five-factor balancing test to determine when *Briones* may be applied retroactively to petitioners who applied for § 1255(i) relief before *Briones* was decided. That test requires us to consider:

> (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

702 F.3d at 518 (quoting *Montgomery Ward & Co. v. FTC*, 691 F.2d 1322, 1333 (9th Cir. 1982)). Because the test turns in part on the extent to which a petitioner relied on the law as it stood before *Briones*, we held that the balancing analysis must be conducted on a case-by-case basis in cases concerning the retroactivity of *Briones*. *Id.* at 519.

What we said in *Garfias-Rodriguez* about the first, fourth, and fifth factors applies with equal force in this case. We concluded that the first factor was neutral—it did not favor either the government or the petitioner. The fourth factor strongly favored the petitioner, since retroactive application of *Briones* would result in his almost certain removal from the United States. The fifth factor leaned somewhat in the government's favor in light of the government's interest in uniform application of the immigration laws. *Id.* at 521–23. All of that is true in this case as well.

The second and third factors are the decisive ones in this context, and they are "closely intertwined." *Id.* at 521. "If a new rule represents an abrupt departure from well established practice, a party's reliance on the prior rule is likely to be reasonable, whereas if the rule merely attempts to fill a void in an unsettled area of law, reliance is less likely to be reasonable." *Id.* (internal quotation marks omitted).

In *Garfias-Rodriguez*, the petitioner asserted two separate reliance interests, neither of which we found legitimate. The petitioner argued that he had reasonably relied on pre-*Briones* law (1) in deciding to apply for relief under § 1255(i), which had the effect of alerting the government to his unlawful presence in the United States; and (2) in deciding to pay the $1,000 filing fee. We held that the only pre-*Briones* law that could have triggered any legitimate reliance interest was

*Acosta*.    Since the petitioner had filed his § 1255(i) application in 2002, four years before *Acosta* was decided, he obviously could not have relied on that case in deciding to take either of the actions he identified.  *Id.* at 522.

However, we suggested in *Garfias-Rodriguez* that the petitioner might have been able to show a legitimate reliance interest had he incurred expenses pursuing his § 1255(i) application during the 21-month period between *Acosta* and *Briones*.  The petitioner's counsel asserted at oral argument that his client had indeed incurred such expenses, but nothing in the record supported the claim, and counsel did not request a remand to supplement the record.  As a result, we held that the second and third factors weighed against the petitioner, which meant the government's interest in applying *Briones* retroactively prevailed.  *Id.* at 521–23.

Like the petitioner in *Garfias-Rodriguez*, the Correo brothers filed their applications for § 1255(i) relief in 2002, so they could not have relied on *Acosta* in deciding to pay the $1,000 filing fee.  But they contend that they relied on *Acosta* in two other respects that give rise to legitimate reliance interests.

First, they assert that they relied on *Acosta* by deciding to remain in the United States unlawfully so that they could continue pursuing their pending § 1255(i) applications.  Had they returned to Mexico in 2006, they point out, they would by now have satisfied almost all of the 10-year period for a waiver of the inadmissibility bar, *see* 8 U.S.C. § 1182(a)(9)(C)(ii), which in turn would have allowed them to file new applications for § 1255(i) relief unimpeded by *Briones*.  We do not think that qualifies as a legitimate reliance interest.  The change in law occasioned by *Briones*

did not impose new burdens on their past act of remaining in the United States in reliance on *Acosta*'s status as the then-prevailing law. *Briones* put them "on notice of *Acosta*'s vulnerability." *Garfias-Rodriguez*, 702 F.3d at 522. Once *Briones* was decided, the brothers could have left the United States immediately and started the 10-year clock ticking under § 1182(a)(9)(C)(ii), but they chose instead to stay and hope for the best. Deciding to leave the United States at that point and abandon their pending applications for § 1255(i) relief no doubt "would have come at a high personal price." *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 46 (2006). "But the branch of retroactivity law that concerns us here is meant to avoid new burdens imposed on completed acts, not all difficult choices occasioned by new law." *Id.*

Second, the Correo brothers assert that they incurred legal expenses pursuing § 1255(i) relief during the 21-month period between *Acosta* and *Briones*. As noted, in *Garfias-Rodriguez* we suggested that incurring such expenses could potentially tilt the second and third factors in the petitioner's favor. 702 F.3d at 522. We made good on that suggestion in *Acosta-Olivarria v. Lynch*, 799 F.3d 1271 (9th Cir. 2015), where we held that applying for § 1255(i) relief and paying the $1,000 filing fee during the 21-month window between *Acosta* and *Briones* established a legitimate reliance interest for purposes of the second and third factors. *Id.* at 1275–77.

The record does not reflect the amount of the expenses the Correo brothers incurred during the relevant 21-month window. They have asked us to remand the case to the BIA so that they can supplement the record in that regard. We grant their request. When the brothers appeared before the IJ and the BIA, we had not yet decided *Garfias-Rodriguez*. No one knew at that time what test for retroactivity would

govern, let alone that proof of expenses incurred during the 21-month window between *Acosta* and *Briones* might prove critical to the outcome of the retroactivity analysis. We therefore remand to the BIA with instructions to grant the brothers an opportunity to supplement the record. The BIA can then assess in the first instance, under the five-factor test we adopted in *Garfias-Rodriguez*, whether *Briones* may be applied retroactively in this case.

**PETITION FOR REVIEW GRANTED; CASE REMANDED.**