In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2122

MARGARITA REYES-SANCHEZ,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General
of the United States,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals.

ARGUED DECEMBER 1, 2010—DECIDED JULY 14, 2011

Before BAUER, POSNER, *Circuit Judges*, and PALLMEYER,
*District Judge.**

PALLMEYER, *District Judge*. Margarita Reyes-Sanchez,
a citizen and native of Mexico, entered the United States
illegally in 1987 and remained until returning briefly

---

* The Honorable Rebecca R. Pallmeyer of the Northern
District of Illinois, sitting by designation.

to Mexico in August 2001. The Border Patrol appre-
hended Reyes-Sanchez in August 2001 near El Paso as
she attempted to re-enter the United States. In custody,
Reyes-Sanchez completed a Form I-826 "Notice of Rights
and Request for Disposition" in which she admitted
her illegal presence in the United States, waived a
hearing, and agreed to return to Mexico. In May 2003,
Ms. Reyes-Sanchez was apprehended in an unrelated
Immigrations and Customs Enforcement raid. She ap-
plied for cancellation of removal, but the Immigration
Judge ("IJ") found her ineligible on the basis that her agree-
ment, in August 2001, to return to Mexico constituted a
break in her continuous physical presence in the United
States. The Bureau of Immigration Appeals ("BIA")
affirmed the IJ's decision. We conclude that Reyes-
Sanchez's apprehension at the border in 2001 and subse-
quent decision to admit illegal presence and return
to Mexico had the effect of a break in her continuous
physical presence within the United States. We therefore
affirm the decision of the BIA and IJ.

## I.

Margarita Reyes-Sanchez first entered the United States
in 1987. She was married here the following year and
raised three children in this country. She returned briefly
to Mexico in August 2001, and re-entered the United
States near El Paso, Texas, on August 19, 2001, with-
out being admitted or paroled. The Border Patrol appre-
hended Reyes-Sanchez on that date, and gave her a Form
I-826 (in Spanish) titled "Notice of Rights and Request

for Disposition." The form offered three options for Reyes-Sanchez to choose from: she could request a hearing before the immigration court to determine whether she could stay in the United States; she could request an asylum hearing; or she could acknowledge her unlawful presence with this language:

> I admit that I am in the United States illegally, and I believe I do not face harm if I return to my country. I give up my right to a hearing before the Immigration Court. I wish to return to my country as soon as arrangements can be made to effect my departure. I understand that I may be held in detention until my departure.

(Appx. 25-26.) Reyes-Sanchez chose the third option and was returned to Mexico. On May 5, 2003, however, Immigrations and Customs Enforcement agents raided Reyes-Sanchez's home in search of her nephew, and apprehended her as well. Agents matched Reyes-Sanchez with her immigration history through photographs and fingerprint records. (Reyes-Sanchez signed the August 2001 form using the fictitious name Christina Maldonado-Rodriguez. Neither party disputes that Reyes-Sanchez was the person who actually signed that form.)

Reyes-Sanchez was issued a Notice to Appear ("NTA") on that same day, May 5, 2003, charging her with removability pursuant to § 212(a)(6)(A)(I) of the Immigration and Nationality Act as an alien present in the United States without having been admitted or paroled. Immigration proceedings were formally commenced on February 12, 2004, when the NTA was filed in im-

migration court. Reyes-Sanchez appeared in immigration court on May 3, 2004, represented by counsel, admitted the allegations against her, and conceded removability. Reyes-Sanchez asserted that she would seek cancellation of removal pursuant to 8 U.S.C. § 1229b(d). The court granted Reyes-Sanchez until January 8, 2005, to file for cancellation of removal, and continued her removal hearing until February 8, 2005. Continuous physical presence in the United States for a period of ten years is a prerequisite to cancellation of removal. 8 U.S.C. § 1229(b)(1)(A). Reyes-Sanchez declined to file for cancellation of removal, however, after the government disclosed that it had written records (presumably the Form I-826) showing that Reyes-Sanchez had been apprehended in August 2001 and had chosen to depart the United States, which constituted a break in her continuous physical presence under *In re: Romalez*, 23 I. & N. Dec. 423 (BIA 2002).

At a hearing on February 8, 2005, Reyes-Sanchez's counsel conceded her removability based on a break in her continuous physical presence. Counsel nevertheless asked the court to allow Reyes-Sanchez to remain in the United States until her husband's legalization petition, which had been pending for more than a decade, was decided. Reyes-Sanchez noted that she had been living in the United States since 1987 and had three teenage children in the country. The court concluded that "these arguments, while sympathetic, amount to prosecutorial discretion arguments, something this Court does not have jurisdiction to decide." The court granted Reyes-Sanchez ninety days from the date of its decision to voluntarily depart, until May 9, 2005.

Reyes-Sanchez appealed the denial of her request for a continuance, and cited *Ortiz-Cornejo v. Gonzales,* 400 F.3d 610 (8th Cir. 2005), which had been decided on March 11, 2005. In that case, the Eighth Circuit held that merely being turned back at the border without any threat of deportation does not constitute a break in a petitioner's continuous physical presence for purposes of cancellation of removal. On May 18, 2006, the Board of Immigration Appeals remanded Reyes-Sanchez's case, because "[w]hile the voluntary return document appears on its face to satisfy the requirements of *Ortiz-Cornejo v. Gonzales*, . . . the parties should have an opportunity to present this document to the Immigration Judge for fact-finding." *In re: Margarita Reyes-Sanchez*, A97-319-901 (BIA May 18, 2006).

In a written opinion dated March 11, 2009, the IJ concluded that Reyes-Sanchez could not satisfy the continuous physical presence requirement for cancellation of removal because, as shown by the Form I-826 and corroborating evidence, her voluntary departure from the United States was indeed a response to a threat of removal. The IJ once again granted voluntary departure by May 11, 2009. Reyes-Sanchez appealed, and, on April 23, 2010, the BIA affirmed the IJ's decision, and ordered immediate removal because Reyes-Sanchez did not post a required voluntary departure bond after filing her notice of appeal. Reyes-Sanchez then appealed to this court.

## II.

Petitions for review of orders of removal are subject to review by the courts of appeals in the circuit "in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2). Reyes-Sanchez's immigration proceedings were completed in front of the Chicago, Illinois, immigration court, making this circuit the proper venue for review. While denials of discretionary relief are not subject to judicial review, 8 U.S.C. § 1252(a)(2)(B), this court has previously held that "[t]he meaning of the term 'continuous physical presence' is a non-discretionary question of statutory interpretation. As such, it falls outside § 1252(a)(2)(B)'s jurisdiction-stripping rule." *Morales-Morales v. Ashcroft*, 384 F.3d 418, 423 (7th Cir. 2004).

We review the IJ's decision as supplemented by the BIA where, as here, the BIA relied on the IJ's decision in rendering its own decision. *Oryakhil v. Mukasey*, 528 F.3d 992, 998 (7th Cir. 2008). This court must uphold the decision to deny relief if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (quoting *Chatta v. Mukasey*, 523 F.3d 748, 751 (7th Cir. 2008)). "[O]nly if the record compels a contrary result" will the court overturn the decision to deny relief. *Oryakhil*, 528 F.3d at 998 (quoting *Mema v. Gonzalez*, 474 F.3d 412, 416 (7th Cir. 2007)).

Reyes-Sanchez contends that the BIA and IJ erred in holding that her apprehension at the border in August 2001 constituted a break in her continuous physical presence. The Attorney General may cancel

removal of an alien who would otherwise be removable, if, among other requirements, the alien "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." 8 U.S.C. § 1229b(b)(1)(A). Though that statute sets out criteria describing when a "break" occurs sufficient to terminate continuous physical presence, 8 U.S.C. § 1229b(d)(2), the BIA held in 2002 that the statutory language does not provide the "exclusive measure of what constitutes a break in continuous physical presence." *In re: Romalez*, 23 I. & N. Dec. 423, 424 (BIA 2002). The BIA concluded that "a departure that is compelled under threat of the institution of deportation or removal proceedings is a break in physical presence." *Id.* The *Romalez* decision noted that in two of the instances in which Romalez had left the country, he had done so pursuant to an earlier version of a provision allowing for "voluntary departures." *Id.* at 429. The BIA quoted approvingly *Romalez*'s description of a "voluntary departure" as "like a plea bargain." *Id.* The BIA continued:

> The alien leaves with the knowledge that he does so in lieu of being placed in proceedings. The clear objective of an enforced departure is to remove an illegal alien from the United States. There is no legitimate expectation by either of the parties that an alien could illegally reenter and resume a period of continuous physical presence.

*Id.*

This court examined these same provisions to determine whether Celia Morales-Morales had broken continuous physical presence in the United States when, after returning to Mexico for two weeks to visit her ailing mother, she was turned back by the Border Patrol four times within a week, then apprehended on her fifth attempt and charged with illegal reentry. *Morales-Morales*, 384 F.3d at 420. The court noted that "no evidence" supported the notion that Morales's voluntary departure had taken place under threat of removal or deportation proceedings. *Id.* at 427. Morales testified, the court noted, that she never appeared before an IJ or in any hearing, and the Border Patrol "just took me, threw me around, and turned me back." *Id.* The court concluded that "[w]e simply cannot equate being turned back at the border with a formal voluntary departure or departure under an order of removal or deportation." *Id.* at 428.

Reyes-Sanchez urges that her own contact at the border in August 2001 lacked the necessary procedural safeguards and formalities to put her on notice that returning to Mexico would end her continuous physical presence in the United States. (Pet.'s Br. at 12.) At oral argument, Reyes-Sanchez's counsel asserted that due to the "chaotic" situation at the border, Reyes-Sanchez did not receive adequate information with which to make an informed decision as to which of the three options presented by Form I-826 she should pursue. Indeed, counsel noted, had Reyes-Sanchez submitted to a hearing, she may well have been eligible for cancellation of removal, as she had been living in the United States continuously for more than ten years.

In arguing that she was not adequately informed of the consequences of her decision to return to Mexico, Reyes-Sanchez points to 8 C.F.R. § 240.25, governing "voluntary departures." The procedural mandates of that regulation were not present in her case, she contends, and therefore she could not have been subject to a "voluntary departure." She emphasizes that her Form I-826 was signed by a "service officer" rather than the type of "authorized officer" specified in § 240.25(a). As we read that provision, however, it identifies officials who may "exercise" the voluntary departure procedures, not those who may sign a form certifying service of a Form I-826. Reyes-Sanchez points to no authority that supports her argument that a Form I-826 signed by a "service officer" runs afoul of § 240.25. Nor, for that matter, does she suggest that the "service officer" may not also be an "authorized officer" within the meaning of that regulation. Reyes-Sanchez also contends that she did not "receive the benefit of voluntary departure" because the I-826 does not specify a "period of time permitted for voluntary departure," as required by § 240.25(c). The Form I-826 did, however, specify a time period, albeit in general terms—"as soon as arrangements can be made"—and informed her she may be held in custody until that could occur. These objections are unavailing.

Reyes-Sanchez also contends that because the Form I-826 she signed noted that "you may request to return to your country," it suggested a "voluntary return," rather than a "voluntary departure," which are both, to some degree, terms of art in the immigration context. Reyes-Sanchez argues that "while the former carries no legal

consequence, the [latter] carries substantial legal conse-quences." Indeed, the statutory provision explaining "voluntary departure" provides that "[t]he Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense under this sub-section, in lieu of being subject to [removal] proceed-ings." 8 U.S.C. § 1229c(a)(1). By contrast, Reyes-Sanchez points to the Customs and Border Patrol website, which, on a "Frequently Asked Questions" page, explains that: "Illegal aliens are afforded two essential legal rights: a voluntary return to their host country or a removal hearing. The voluntary return allows the non-criminal illegal alien to return to his/her host country without being prosecuted." *Frequently Asked Questions*, online at http://www.cbp.gov/xp/cgov/border_security/ border_patrol/border_patrol_sectors/sandiego_sector_ca/ sector_ programs/faqs.xml (visited June 15, 2011). Reyes-Sanchez notes, in addition, that a report from the De-partment of Homeland Security's Inspector General explains that voluntary returns are often effectuated for juveniles apprehended at the border, rather than placement in immigration proceedings. *A Review of DHS' Responsibilities for Juvenile Aliens*, OIG-05-45 (Sept. 2005), online at http://www.dhs.gov/xoig/assets/mgmtrpts/ OIG_05-45_Sep05.pdf (visited June 15, 2011). The United States responds that, in this context, Form I-826's reference to "return" rather than "departure" is a "distinction without a difference." (Resp.'s Br. at 19.) "It is disingenu-ous for Petitioner to suggest that Petitioner would have a different understanding of her options if she had been offered the opportunity to 'depart' rather than 're-turn' to Mexico.' " (*Id.*)

The court notes that the examples Reyes-Sanchez offers to support her definition of "voluntary return" do not clearly do so. Regardless, whether the word "depart" or "return" was used on the Form I-826, is not central to the law as interpreted in *Romalez*, which has since been endorsed by every Circuit to consider it. *See Asencio-Rodriguez v. Holder*, 595 F.3d 105, 112 (2d Cir. 2010); *Mendez-Reyes v. Attorney-Gen.*, 428 F.3d 187, 191-92 (3d Cir. 2005); *Mirelez-Valdez v. Ashcroft*, 349 F.3d 213, 218 (5th Cir. 2003); *Morales-Morales*, 384 F.3d at 427; *Palomino v. Ashcroft*, 354 F.3d 942, 944 (8th Cir. 2004); *Vasquez-Lopez v. Ashcroft*, 343 F.3d 961, 973 (9th Cir. 2003). In determining whether an encounter at the border is sufficient to break a petitioner's continuous physical presence and render her ineligible for cancellation of removal, the court must determine whether the petitioner faced a formal, documented process at the border, and chose to depart under threat of removal. After the *Morales-Morales* and *Ortiz-Cornejo* decisions, the BIA elaborated on the circumstances that distinguish the type of informal encounter that does not create a break in continuous physical presence from the type of formal encounter that does. In *In re: Avilez-Nava*, 23 I. & N. Dec. 799 (BIA 2005), the BIA considered the case of a woman who had returned to Mexico for two weeks to be with her mother after her grandmother died. *Id.* at 800. The woman, Avilez-Nava, was stopped at the border near San Ysidro when she attempted to cross. *Id.* She admitted she did not have any documents, was told by immigration officials she could not enter the country, and was escorted to a door through which she returned to Mexico. *Id.* The BIA

held that border officials' mere refusal to admit an alien does not constitute a break in the alien's continuous physical presence

> unless there is evidence that the alien was formally excluded or made subject to an order of expedited removal, was offered and accepted the opportunity to withdraw his or her application for admission, or was subjected to any other formal, documented process pursuant to which the alien was determined to be inadmissible to the United States.

*Id.* at 805-06. The BIA went on to explain that evidence of such a formal process "may include testimony or documentary evidence of a legally enforced refusal of admission and return such as a Record of Deportable/ Inadmissible Alien (Form I-213), a Notice of Action—Voluntary Departure (Form I-210), an IDENT printout, affidavits or statements of the alien or immigration officials, photographs, fingerprints, or other appropriate forms and official records of the DHS." *Id.*

The question here, therefore, is whether Reyes-Sanchez was subject to the type of "formal, documented process pursuant to which the alien was determined to be inadmissible to the United States" that the BIA, this court, and other courts have held sufficient to constitute a break in continuous physical presence. The IJ, following this precedent, concluded that Reyes-Sanchez's contact at the border did constitute a break because she voluntarily departed under threat of removal, as evidenced by "the Form I-826, the IDENT printout, the I-213, her finger-

print record, and the letter from Supervisory Border Patrol Agent Garcia." (Appx. at 11.) In addition, the IJ noted, Reyes-Sanchez was held in custody until turned over to a Mexican immigration official—"not simply 'turned around' at the border after detection." (*Id.*) The BIA referenced the same evidence of Reyes-Sanchez's apprehension at the border in affirming the IJ's decision.

This court concurs. Reyes-Sanchez was taken into custody; she was fingerprinted; and forms were filled out documenting her apprehension. Reyes-Sanchez was given a Form I-826 that explained she had "been arrested because immigration officers believe that you are illegally in the United States." The one-page form explained that she could request a hearing "to determine whether you may remain in the United States." The form further informed Reyes-Sanchez of her "right to contact an attorney or other legal representative to represent you at your hearing, or to answer any questions regarding your legal rights in the United States," and offered a list of legal organizations that could represent her "for free or for a small fee." The form also gave Reyes-Sanchez the three options previously discussed—a request for a hearing on removability, a request for an asylum hearing, or an admission that she was in the United States illegally and wished to return home. There can be little question that had Reyes-Sanchez read this form, she would have understood her options and understood that they carried lasting legal consequence. Indeed, the fact that Reyes-Sanchez used a fictitious name to sign the Form I-826 suggests she understood the form did indeed carry legal consequences.

At oral argument, Reyes-Sanchez's counsel argued the form was insufficient, because it did not go the extra step of informing her that she might have been eligible for cancellation based on her ten years of continuous residence, but would have to request a hearing. This court concludes, consistent with prior case law, that the Form I-826 sufficiently informed her of her rights and options. In fact, given the myriad circumstances that those apprehended at the border face, the brevity of Form I-826 may well be preferable to providing each detainee a denser explication of the relevant law. The facts of Reyes-Sanchez's apprehension, "supported by reasonable, substantial, and probative evidence on the record considered as a whole," *Oryakhil*, 528 F.3d at 998, compel this court's conclusion that the BIA and IJ correctly determined that Reyes-Sanchez's continuous physical presence in the United States was interrupted when she chose to return to Mexico in a formal, documented process while facing threat of removal.

## III.

For the reasons stated above, we AFFIRM the decisions of the IJ and the BIA.