# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-2317

GUSTAVO NUNEZ-MORON,

*Petitioner*,

*v.*

ERIC H. HOLDER, Jr., Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A096-069-584

ARGUED SEPTEMBER 20, 2012—DECIDED OCTOBER 30, 2012

Before EASTERBROOK, *Chief Judge*, and MANION and
TINDER, *Circuit Judges*.

MANION, *Circuit Judge.* Gustavo Nunez-Moron, a
citizen of Mexico, sought cancellation of removal,
waiver of inadmissibility, and adjustment of status
based on alien-relative petitions from his wife, a
United States citizen, and his father, a legal permanent
resident. Concluding that Nunez was inadmissible

because he had re-entered the United States after previously being removed, the Immigration Judge and the Board of Immigration Appeals denied his applications. Nunez now petitions this court for review. Because Nunez's allegations of error lack merit, we deny his petition.

## I. Background

Nunez illegally entered the United States in 1992. In 1997, Nunez's father filed an I-130 Petition for Alien Relative on Nunez's behalf.[1] The petition was approved the following year. On September 15, 1999, Nunez was convicted in state court of misdemeanor battery pursuant to California Penal Code § 242. He was sentenced to time served, that is, fifteen days in jail, and three years' probation. The sentencing court also imposed a fine and required Nunez to receive domestic-violence counseling.

Nunez contends that, on the date of his conviction, he was illegally removed to Mexico pursuant to an expedited removal order. *See* 8 U.S.C. § 1228 (expedited removal of criminal aliens). Nunez's conviction docu-

---

[1]  An I-130 petition is the first step for an alien relative seeking adjustment of status. *See* 8 U.S.C. § 1151(b)(2)(A)(i); 8 C.F.R. § 204.1(a)(1). If approved, the petition permits an illegally present alien to remain in the country and request an adjustment of status. *Afzal v. Holder*, 559 F.3d 677, 678 (7th Cir. 2009) (citing 8 U.S.C. § 1255(a), and 8 C.F.R. § 245.2).

ments, though, do not indicate that he was turned over to immigration officers. The record only shows that Nunez was subjected to an expedited removal order about a week later, when on September 24, 1999, he attempted to enter the United States at the Mexico-California border. On that date, Nunez approached the border with an I-551 resident-alien card bearing the name "Enrique Mendoza-Gutierrez," which he had purchased in Mexico. He was detained and questioned by the Immigration and Naturalization Service ("INS"). Nunez told the interrogating officer that his name was "Roberto Mendez-Munoz." Under oath, Nunez stated that the resident-alien card did not belong to him and that he knew it is illegal to enter the United States with false identification. Nunez admitted that he lacked legal documentation permitting him to enter or reside in the United States. Nunez also stated that he did not have any immigration applications pending, that he previously had never been in the United States, and that he had never been removed or deported. The officer concluded that Nunez—whom the officer still believed to be Mendez-Munoz[2]—was inadmissible, and removed him from the United States pursuant to an expedited removal order. *See* 8 U.S.C. § 1225(b)(1) (expedited removal of inadmissible arriving aliens); 8 U.S.C. § 1182(a)(6)(C)(i) (attempted admission by fraud), (a)(7)(A)(i)(I) (attempted admission without valid entry

---

[2] Nunez admitted using the pseudonym "Mendez-Munoz" when he filed his applications for asylum and withholding of removal some years later.

documents). As part of the expedited removal process, Nunez was informed that he could not re-enter the United States for five years, and that attempting to do so could subject him to criminal penalties.

Nonetheless, Nunez re-entered the United States on December 1, 1999. Subsequently, Nunez filed applications for asylum, withholding of removal, and protection under the Convention Against Torture. The INS then filed a Notice to Appear with the immigration court in Los Angeles, California, and alleged that Nunez was removable. Nunez appeared with counsel before an Immigration Judge ("IJ") in Los Angeles, admitted the factual allegations in the Notice to Appear, and conceded removability. Nunez also withdrew his applications for asylum, withholding of removal, and protection under the Convention Against Torture. Instead, Nunez petitioned the IJ for cancellation of removal or, alternatively, voluntary departure. The IJ concluded that Nunez was not eligible for cancellation of removal because, in light of the September 24 expedited removal, he had not remained physically present in the United States for ten years prior to the date of his application. *See* 8 U.S.C. § 1229b(b)(1). Consequently, the IJ granted Nunez's alternative request for voluntary departure.

Nunez appealed the IJ's decision to the Board. Before the Board ruled, however, Nunez moved to reopen his removal proceedings because his wife had become a United States citizen and had filed an I-130 petition on

his behalf.[3] Without opposition from the Department of Homeland Security ("DHS"), the Board granted Nunez's motion and remanded.

Nunez subsequently moved to Illinois, and the IJ granted Nunez's request to transfer his removal proceedings to Chicago, Illinois. After a hearing, the IJ in Chicago issued a written decision reinstating the earlier denial of cancellation of removal. In addition, the IJ held that Nunez was ineligible for adjustment of status because he had illegally re-entered the United States after previously being removed under § 1225(b)(1). *See* 8 U.S.C. § 1182(a)(9)(C)(i)(II). Finally, the IJ noted that, although the DHS had not reinstated Nunez's September 24 expedited removal order, the order still might preclude his request for adjustment of status. *See* 8 U.S.C. § 1231(a)(5).

On appeal, the Board initially remanded because the record was misplaced. At a subsequent hearing, the IJ recounted the procedural posture of the removal proceedings and, without objection from Nunez, reissued his prior decision. After briefing, the Board issued a written decision dismissing Nunez's appeal. The Board rejected Nunez's argument that, despite having illegally re-entered the United States, he could petition for adjustment of status under 8 U.S.C. § 1255(i). The Board also held that Nunez was ineligible for adjust-

---

[3] Nunez married after his removal proceedings began. He and his wife have three children, each of whom is a United States citizen.

ment of status because of his September 24 expedited removal order—even though the order never had been reinstated by the DHS. Finally, the Board agreed that Nunez was ineligible for cancellation of removal because he had not remained physically present in the United States for ten years prior to the date of his cancellation application. The Board ordered Nunez removed. He now seeks review by this court.

## II. Discussion

Nunez contends that the Board erred in holding that he was ineligible for adjustment of status under § 1182(a)(9)(C)(i)(II) because he illegally re-entered the United States after his expedited removal. Nunez also challenges the Board's alternate conclusion that his September 24 expedited removal bars his request for adjustment of status. Finally, Nunez argues that the Board erred in finding that he had not remained physically present in the United States for ten years prior to the date of his cancellation application.

## A. Nunez's Prior Removal and Re-Entry Make Him Ineligible for Adjustment of Status

Nunez argues that he is not inadmissable under § 1182(a)(9)(C)(i)(II) because § 1255(i) "otherwise provide[s]" that he is admissible—or, at least, that he

may seek adjustment of status.[4] *See* 8 U.S.C. § 1182(a) ("*Except as otherwise provided in this chapter*, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States . . . .") (emphasis added). Alternatively, Nunez argues that, at a minimum, there is a statutory conflict between § 1182(a)(9)(C)(i)(II) and § 1255(i). Consequently, according to Nunez, § 1255(i) controls over § 1182(a)(9)(C)(i)(II) because it is the more recently enacted statute.

The Board has rejected these arguments and held that an alien may not adjust his status under § 1255(i) if he is inadmissible under either § 1182(a)(9)(C)(i)(I) or § 1182(a)(9)(C)(i)(II).[5] *See In re Briones*, 24 I. & N. Dec. 355 (BIA 2007); *In re Torres-Garcia*, 23 I. & N. Dec. 866 (BIA 2006). Other circuits have uniformly deferred to *Briones* and *Torres-Garcia* when considering the interplay between § 1182(a)(9)(C) and § 1255(i). *See, e.g., Carrillo de Palacios v. Holder*, 662 F.3d 1128, 1132-34 (9th Cir. 2011); *Sarango v. Attorney Gen. of U.S.*, 651 F.3d 380, 387 (3d Cir.

---

[4] Section 1255(i) applies to certain aliens who are physically present in the United States but who entered illegally. Under § 1255(i), an eligible alien "may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence." Nunez relies upon the I-130 petition filed by his father on his behalf, and approved prior to his September 24 expedited removal.

[5] Section 1182(a)(9)(C)(i)(I) is not substantively distinct from § 1182(a)(9)(C)(i)(II) for the purposes of applying § 1255(i). *See In re Briones*, 24 I. & N. Dec. at 367.

2011).[6] In dicta, we have agreed that *Briones* and *Torres-Garcia* are entitled to deference. *See Lemus-Losa v. Holder*, 576 F.3d 752, 760 (7th Cir. 2009). Recently, we elevated that dicta to a holding in *Gonzalez-Balderas v. Holder*, 597 F.3d 869, 870 (7th Cir. 2010). Nunez does not identify any compelling reason to re-visit this precedent, and we decline to do so. *See McClain v. Retail Food Emp'rs Joint Pension Plan*, 413 F.3d 582, 586 (7th Cir. 2005) ("We require a compelling reason to overturn circuit precedent.").[7]

---

[6] *See also Garfias-Rodriguez v. Holder*, 649 F.3d 942, 944-49 (9th Cir. 2011); *Padilla-Caldera v. Holder*, 637 F.3d 1140, 1147-53 (10th Cir. 2011); *Renteria-Ledesma v. Holder*, 615 F.3d 903, 908-09 (8th Cir. 2010); *Ramirez v. Holder*, 609 F.3d 331, 334-37 (4th Cir. 2010); *Mora v. Mukasey*, 550 F.3d 231, 237-39 (2d Cir. 2008); *Ramirez-Canales v. Mukasey*, 517 F.3d 904, 907-10 (6th Cir. 2008); *Delgado v. Mukasey*, 516 F.3d 65, 70-74 (2d Cir. 2008); *Gonzales v. DHS*, 508 F.3d 1227, 1241-42 (9th Cir. 2007); *cf. Mortera-Cruz v. Gonzales*, 409 F.3d 246, 256 (5th Cir. 2005) (deferring to an unpublished Board decision holding that an alien inadmissible under § 1182(a)(9)(C)(I) is not eligible for adjustment of status under § 1255(i)). Nunez cites two pre-*Briones* decisions holding that inadmissibility under § 1182(a)(9)(C)(i)(I) does not bar an alien from seeking relief pursuant to § 1255(i). *Padilla-Caldera v. Gonzales*, 453 F.3d 1237, 1241-44 (10th Cir. 2006); *Acosta v. Gonzales*, 439 F.3d 550, 554-56 (9th Cir. 2006). Both decisions have been abandoned in deference to *Briones* and *Torres-Garcia*. *See Padilla-Caldera v. Holder*, 637 F.3d at 1153; *Garfias-Rodriguez*, 649 F.3d at 947-49.

[7] In his reply brief, Nunez argues that *Zadvydas v. Davis*, 533 U.S. 678 (2001), provides a compelling reason to reject *Briones*

(continued...)

Nunez also attempts to distinguish these decisions based on his claim that he was removed illegally on September 15, 1999. However, the record contains no evidence that Nunez was subjected to an expedited removal order on September 15. And Nunez does not challenge the September 24 expedited removal order as improper in itself. Moreover, Nunez's argument would amount to a collateral attack on the legality of his purported September 15 removal, and we would lack jurisdiction to review such a challenge. 8 U.S.C. § 1252(a)(2)(A); *Khan v. Holder*, 608 F.3d 325, 328-31 (7th Cir. 2010).

Finally, Nunez argues that, even if he were inadmissible pursuant to § 1182(a)(9)(C)(i)(II), he nonetheless would be eligible to request waiver of this inadmissibility by petitioning the Attorney General—by means of a *nunc pro tunc* petition—to retroactively consent to his § 1255(i) application for adjustment of status. *See* 8 C.F.R.

---

[7] (...continued)

and *Torres-Garcia*. In *Zadvydas*, the Supreme Court concluded that aliens held in detention after being ordered removed have due process rights and, consequently, are entitled to commence *habeas corpus* actions. *Id.* at 682, 693. Because *Zadvydas*—which predates *Briones*, *Torres-Garcia*, and *Gonzalez-Balderas*—does not address the issues raised in this appeal, it does not provide a compelling reason to revisit our precedent. Regardless, Nunez's argument is waived. *Broaddus v. Shields*, 665 F.3d 846, 854 (7th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are waived.").

§ 212.2(e). In *Torres-Garcia*, the Board considered this argument and held that an alien is not eligible for relief via a *nunc pro tunc* petition if such relief would avoid § 1182(a)(9)(C)'s ten-year bar on waivers of inadmissibility. 23 I. & N. Dec. at 873-76. In *Gonzalez-Balderas*, we also entertained this argument and deferred to *Torres-Garcia*.[8] 597 F.3d at 870. As stated above, we will not

---

[8] Nunez argues that we should reconsider our deference to *Torres-Garcia*'s holding respecting *nunc pro tunc* petitions because the Board did not take into account the Violence Against Women Act ("VAWA"), which was enacted twenty-one days before *Torres-Garcia* was decided. Pub. L. No. 109-162, 119 Stat. 2960 (enacted Jan. 5, 2006). As enacted, § 813(b) of the VAWA provided that "[t]he Secretary of Homeland Security, the Attorney General, and the Secretary of State shall continue to have discretion to consent to an alien's reapplication for admission after a previous order of removal, deportation, or exclusion." Nunez argues that this language shows that Congress intended that the Attorney General continue to have the authority to grant *nunc pro tunc* petitions pursuant to regulation § 212.2. This expression of congressional intent, according to Nunez, undermines the Board's determination that § 212.2 only implemented "statutory provisions that were repealed by the [Illegal Immigration Reform and Immigrant Responsibility Act of 1996]." 23 I. & N. Dec. at 875.

Nunez's argument provides no basis for abandoning our deference to *Torres-Garcia* because the Board held that, even if regulation § 212.2 *did* apply to § 1182(a)(9)(C)(i)(II), the unambiguous language of § 1182(a)(9)(C)(i)(II) still would preclude an alien like Nunez from seeking relief via a *nunc pro tunc* petition. 23 I. & N. Dec. at 875; *see also Delgado*, 516 F.3d

(continued...)

revisit this precedent here.

In sum, the Board correctly held that § 1182(a)(9)(C)(i)(II) precludes Nunez from petitioning for an adjustment of status pursuant to § 1255(i) or seeking a retroactive waiver of inadmissibility pursuant to regulation § 212.2(e). Because we affirm the Board's decision on these grounds, we need not—and do not—consider whether the Board erred in also holding that § 1231(a)(5)[9] bars Nunez from seeking an adjustment of status even though his September 24 expedited removal order had not been reinstated by the DHS when the Board issued its ruling.[10]

---

[8] (...continued)

at 73 (finding § 813(b) irrelevant to inadmissibility under § 1182(a)(9)(C)(i)(II) because Congress removed § 813(b) on August 12, 2006).

[9] Section 1231(a)(5) provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed . . . the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

[10] The DHS reinstates a prior removal order via Form I-871. *See Faiz-Mohammad v. Ashcroft*, 395 F.3d 799, 801 (7th Cir. 2005). While this appeal was pending, the DHS moved to reopen and dismiss the removal proceedings against Nunez based on its intent to reinstate Nunez's September 24 expedited removal order. The DHS motion referenced an unexecuted Form

(continued...)

**B. Nunez's Expedited Removal Severed His Physical Presence in the United States**

Nunez also contends that the Board erred in holding that he was ineligible for cancellation of removal pursuant to § 1229b(b)(1). The cancellation of removal statute requires, *inter alia*, that an alien "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date" of his application. 8 U.S.C. § 1229b(b)(1)(A). Generally, a period of absence from the United States that lasts 90 days or less will not sever an alien's physical presence. *See* 8 U.S.C. § 1229b(d)(2) ("An alien shall be considered to have failed to maintain continuous physical presence in the United States . . . if the alien has departed from the United States for any period in excess of 90 days . . . ."). The Board did not apply the 90-day rule, but instead concluded that Nunez's September 24 expedited removal order severed his physical presence. Nunez counters that his physical presence was not severed because his September 24 removal was the result of his illegal September 15 removal, and he was not absent from the United States for more than 90 days.

---

[10] (...continued)

I-871. The Board denied the motion to reopen. It is unclear whether the DHS ever executed a Form I-871 vis-à-vis Nunez. Even if the DHS eventually did reinstate Nunez's September 24 expedited removal order, we need not address the effect of that belated decision because we affirm on other grounds.

Although cancellation of removal is discretionary and we lack jurisdiction to review the denial of discretionary relief, we can review the Board's finding that Nunez did not satisfy the physical-presence requirement. *Reyes-Sanchez v. Holder*, 646 F.3d 493, 496 (7th Cir. 2011). Under Board precedent, Nunez's September 24 expedited removal order severed his continuous physical presence in the United States. *See In re Avilez-Nava*, 23 I. & N. Dec. 799, 805 (BIA 2005) ("[W]e hold that an immigration official's refusal to admit an alien at a land border port of entry will not constitute a break in the alien's continuous physical presence, unless there is evidence that the alien was formally excluded or made subject to an order of expedited removal . . . ."); *In re Romalez-Alcaide*, 23 I. & N. Dec. 423, 424 (BIA 2002) ("[A] departure that is compelled under threat of the institution of deportation or removal proceedings is a break in physical presence."). Nunez's effort to avoid this precedent is premised on his factual assertion that he was illegally removed on September 15. As explained above, the record does not support that claim; rather, the evidence shows that Nunez was subjected to an expedited removal order only on September 24.

We, along with numerous other circuits, have deferred to *Romalez-Alcaide*. *See Reyes-Sanchez*, 646 F.3d at 498 (collecting cases). Furthermore, the First and Ninth circuits have held—based on *Avilez-Nava*—that an expedited removal order severs an alien's continuous physical presence in the United States. *Vasquez v. Holder*, 635 F.3d 563, 567-70 (1st Cir. 2011); *Juarez-Ramos v. Gonzales*, 485 F.3d 509, 511-12 (9th Cir. 2007). We find the First

and Ninth circuits' analyses persuasive, and see no reason to reiterate them here. Suffice to say, if a departure under the threat of removal severs an alien's continuous physical presence, then *a fortiori* an actual removal, albeit expedited in nature, also severs an alien's continuous physical presence. Consequently, the Board correctly held that Nunez's September 24 expedited removal order terminated his continuous presence in the United States. Without continuous presence, Nunez did not qualify for cancellation of removal.

## III. Conclusion

For the foregoing reasons, we affirm the decision of the Board of Immigration Appeals, and deny Gustavo Nunez-Moron's petition for review.