**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 30, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JULIO CESAR VALDEZ-RODRIGUEZ,

Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

No. 14-9550
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **LUCERO** and **MATHESON**, Circuit Judges.

---

Petitioner Julio Cesar Valdez-Rodriguez has been ordered removed for

unlawful presence in the United States. He does not challenge his removability, but

he does seek review of an order of the Board of Immigration Appeals (BIA) holding

him ineligible for an adjustment of status that would forestall his removal. We agree

with the BIA's decision and deny his petition for review.

---

[*]  After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

The pertinent facts are not in dispute. Mr. Valdez-Rodriguez resided illegally in the U.S. from 1995 to 2000. He left the country in February 2000, but illegally reentered the same month. In 2002, based on his marriage to a U.S. citizen, he was granted an adjustment of status to a lawful permanent resident (LPR) under 8 U.S.C. § 1255(i).[1] In 2004, this LPR status was rescinded on the ground that, having illegally *reentered* the U.S. *after* a prior period of illegal presence exceeding a year, he was inadmissible under 8 U.S.C. § 1182(a)(9)(C)(i)(I) and therefore was ineligible for the adjustment of status pursuant to § 1255(i)(2)(A) (alien must be "admissible to the United States for permanent residence" to qualify for adjustment of status). *See* 8 U.S.C. § 1256(a) (providing for rescission of adjusted status if within five years it appears the alien "was not in fact eligible for such adjustment of status" when it was granted). He did not seek review of that action. But, as discussed below, he did seek reinstatement of his adjusted status in these ensuing removal proceedings.

The proper interplay has not always been clear between § 1255(i)(1)(A)(i)'s allowance of adjustment of status for aliens who "entered the United States without inspection" and § 1255(i)(2)(A)'s requirement that the alien seeking the adjustment be "admissible to the United States for permanent residence"—a requirement that is facially not met by any alien who, like Mr. Valdez-Rodriguez, reentered the country

---

[1] Section 1255(i) permits the Attorney General to adjust the status of certain aliens notwithstanding their illegal entry without inspection into the U.S.

without inspection in violation of § 1182(a)(9)(C)(i)(I). When removal proceedings began against Mr. Valdez-Rodriguez in Texas in July 2006, the Fifth and Tenth Circuits took opposing positions on whether aliens inadmissible under § 1182(a)(9)(C)(i)(I) were still eligible for adjustment of status under § 1255(i). The Tenth Circuit had recently held such aliens remained eligible under § 1255(i), *see Padilla-Caldera v. Gonzales*, 453 F.3d 1237, 1239, 1243-44 (10th Cir. 2005) (*Padilla I*), *disapproved in later appeal by Padilla-Caldera v. Holder*, 637 F.3d 1140 (10th Cir. 2011) (*Padilla II*), while the Fifth Circuit held they did not, *see Mortera-Cruz v. Gonzales*, 409 F.3d 246, 248, 256 (5th Cir. 2005). Hence it was significant that Mr. Valdez-Rodriguez relocated to Oklahoma City within the Tenth Circuit and then secured a change of venue to Oklahoma in December 2006. Shortly thereafter, he appeared before an Immigration Judge (IJ), admitted removability, and indicated that he would seek reinstatement of his adjusted status as an LPR (although, as noted below, he waited several years to file an application).

After some delays, including several continuances at Mr. Valdez-Rodriguez's request, the matter was heard by an IJ in April 2011. By then, two significant interrelated events had occurred. First, the BIA issued a published decision holding that inadmissibility under § 1182(a)(9)(C)(i)(I) rendered an alien ineligible for adjustment of status under § 1255(i). *See In re Briones*, 24 I. & N. Dec. 355, 371 (BIA 2007). Second, the Tenth Circuit reconsidered its position in light of *Briones* and, giving deference to the BIA's authoritative construction of the relevant statutory

provisions, now held that inadmissibility under § 1182(a)(9)(C)(i)(I) resulted in ineligibility under § 1255(i). *See Padilla II*, 637 F.3d at 1152. Thus, when it came time to resolve Mr. Valdez-Rodriguez's request for reinstatement of his adjusted status as an LPR, controlling precedent of the BIA and this circuit precluded his eligibility for such relief. He attempted to avoid this result by challenging the allegedly retroactive use of that precedent, arguing that the precedent was erroneous and should be overruled, and seeking equitable remedies barring its application to his case. After the IJ rejected these efforts in fairly summary fashion, the BIA addressed them at greater length and likewise rejected them. This petition for review followed.

ANALYSIS

A large portion of Mr. Valdez-Rodriguez's appellate briefing is devoted to criticizing *Padilla II* and its reliance on *Briones* for deviating from *Padilla I*. The panel in *Padilla II* fully justified its divergence from *Padilla I*, explaining that it was, in effect, answering a different question. *Padilla II* dealt with the deference owed *Briones*' construction of ambiguous statutory provisions; *Padilla I* had been an initial effort to construe the same provisions directly, without the benefit of an authoritative agency decision to which to defer. Here, we face the same issue already resolved by *Padilla II* and, absent superseding en banc review or Supreme Court decisions, we are in no position to address arguments directed at the merits of the reasoning in *Padilla II*. *See Rezaq v. Nalley*, 677 F.3d 1001, 1012 n.5 (10th Cir. 2012). It is worth noting, however, that "[o]ther circuits have uniformly deferred to *Briones* and

- 4 -

*Torres-Garcia*[2] when considering the interplay between § 1182(a)(9)(C) and

§ 1255(i)." *Nunez-Moron v. Holder*, 702 F.3d 353, 356 & n.6 (7th Cir. 2012)

(collecting cases).

Mr. Valdez-Rodriguez contends that the rule of *Padilla II* should not apply

retroactively to his case. The government notes that, ordinarily, judicial "[d]ecisions

of statutory interpretation are fully retroactive, because they do not change the law,

but rather explain what the law has always meant." *United States v. Rivera-Nevarez*,

418 F.3d 1104, 1107 (10th Cir. 2005). But in an en banc opinion involving the same

statutory provisions, the Ninth Circuit recently held that the case-by-case

retroactivity analysis traditionally used for *administrative* decisions—which does not

proceed from a presumption favoring retroactivity—should apply when, as here, an

extant judicial interpretation of a statute is altered in deference to an intervening

agency interpretation. *See Garfias-Rodriguez v. Holder*, 702 F.3d 504, 515-20

(9th Cir. 2012) (en banc). We need not take a definitive position on that point

to decide this case, because, as we explain next, the BIA rejected

Mr. Valdez-Rodriguez's retroactivity argument using the traditional case-by-case

administrative-retroactivity analysis and we discern no error in its determination.

---

[2]     A year before *Briones*, the BIA held in *In re Torres-Garcia*, 23 I. & N. Dec. 866, 876 (BIA 2006), that aliens inadmissible under § 1182(a)(9)(C)(i)(II) were not eligible for adjustment under § 1255(i). Subsections 1182(a)(9)(C)(i)(I) & (II) are thus now treated the same for purposes of § 1255(i). *Nunez-Moron v. Holder*, 702 F.3d 353, 356 n.5 (7th Cir. 2012) (citing *Briones*, 24 I. & N. Dec. at 367).

The BIA first noted its general rule that applications for relief are governed by the law in force at the time a final determination is made, which in this case was after *Briones* and *Padilla II* were decided.[3] It then analyzed whether following this rule imposed an impermissible retroactive disadvantage on Mr. Valdez-Rodriguez under the five-factor test for retroactive application of administrative decisions set out in *Montgomery Ward & Co. v. FTC*, 691 F.2d 1322, 1333 (9th Cir. 1982):

> (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well-established practice or merely attempts to fill a void in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite reliance of a party on the old standard.

R. at 5.[4] It explained that application of *Padilla I* was not required under this test:

> In the case before us, as noted, at its commencement and during much of the early part of the proceedings, jurisdiction in this case was with the Fifth Circuit where the case [Mr. Valdez-Rodriguez] seeks to apply was not controlling precedent. Further, while in 2011, the Tenth Circuit departed from the law of *Padilla* I *supra*, this area of law was

---

[3]   Indeed, Mr. Valdez-Rodriguez did not even formally *submit* his application for reinstatement of adjusted status until the hearing before the IJ on April 4, 2011, *see* R. at 126, 196-203, 287-90—weeks after this court issued *Padilla II* and years after the BIA decided *Briones*. It would thus appear a strong case could be made that these decisions were applied only prospectively—not retroactively—to deny his application. Nevertheless, the BIA did not note this deficiency in his retroactivity objection, so we do not rely on it to affirm the BIA. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006) (noting we will not affirm the BIA on grounds it did not invoke).

[4]   This court adopted the same test, derived from *Retail, Wholesale and Department Store Union v. NLRB*, 466 F.2d 380, 390 (D.C. Cir. 1972), in *Stewart Capital Corp. v. Andrus*, 701 F.2d 846, 848 (10th Cir. 1983).

not settled and there was no well-established practice or application of the holding of *Padilla* I. This area of law was not settled until the Board published *Matter of Briones*, *supra*. Further, although the respondent notes he hired an attorney to pursue his case, he has not presented any evidence of significant reliance on the rule set down in *Padilla* I, *supra*. Although he now seeks to benefit from *Padilla* I, *supra*, at the time of his original application for adjustment of status in 2001, he did not acknowledge his past illegal presence. He, therefore, did not rely on the possibility of adjustment under [§ 1255(i)] despite having been illegally in the United States for over 1 year prior to a departure.

R. at 5. We agree with this assessment. We also note that the Ninth Circuit reached the same conclusion applying the *Montgomery Ward* test to its own post-*Briones* re-interpretation of the relevant statutes in *Garfias-Rodriguez*, 702 F.3d at 520-23.

Finally, Mr. Valdez-Rodriguez argues that the BIA abused its discretion in refusing to let him apply for reinstatement of his adjusted status nunc pro tunc to the date of his first adjustment application or some other date during the proceedings before interpretation of the relevant statutes precluded him from adjusting his status. The BIA noted that the agency had not been responsible for his failure to apply for adjustment at a more favorable time,[5] and deemed use of the nunc pro tunc remedy inappropriate to circumvent the congressional directive precluding adjustment of

---

[5]     Mr. Valdez-Rodriguez states that a government attorney affirmatively told him and his counsel that they could not revive his prior application, but the transcript passage cited merely states that the government "fail[ed] to inform him of his available remedies." R. at 180. As to that passive complaint, he has provided no authority for holding the government obligated to inform him of potential relief under *Padilla I* while it remained this circuit's precedent. The BIA acknowledged that an IJ should inquire as to possible relief available to an alien, but noted that by the time the matter came before the IJ for hearing in 2011, relief was no longer available under *Padilla I*. *See* R. at 4.

status for aliens who are inadmissible under § 1182(a)(9)(C)(i), as now construed.[6]

R. at 4 (following *In re Torres-Garcia*, 23 I. & N. Dec. at 874-76). Other circuits

have upheld this administrative judgment, *see, e.g.*, *Nunez-Moron*, 702 F.3d at 357;

*Sarango v. Att'y Gen.*, 651 F.3d 380, 387 (3d Cir. 2011); *Ramirez v. Holder*,

609 F.3d 331, 337 n.7 (4th Cir. 2010), and we do so as well.

 The petition for review is denied.

Entered for the Court


Mary Beck Briscoe
Chief Judge

---

[6] An alien barred by operation of § 1182(a)(9)(C)(i) does have one means of curing his inadmissibility. Section 1182(a)(9)(C)(ii) states that the bar "shall not apply to an alien seeking admission more than 10 years after the date of the alien's last departure from the United States if, *prior to the alien's reembarkation at a place outside the United States or attempt to be readmitted from a foreign contiguous territory*, the Secretary of Homeland Security has consented to the alien's reapplying for admission." (Emphasis added). Mr. Valdez-Rodriguez contends the BIA erred in considering him ineligible for this relief because he had spent the years following his last departure (in 2000) within the U.S., not outside the U.S., as required by § 1182(a)(9)(C)(ii). The BIA's ruling is consistent with both the statutory language and our precedent. *See Fernandez-Vargas v. Ashcroft*, 394 F.3d 881, 885 (10th Cir. 2005) (noting § 1182(a)(9)(C)(ii) requires "completion of an unwaivable ten-year period outside of the United States"). Mr. Valdez-Rodriguez's reference to special allowances made in this regard for certain aliens in the Violence Against Women Act is inapposite, for reasons explained in *Nunez-Moron*, 702 F.3d at 357 n.8.